ELIZABETH LAVERE PROBST and EARL JOSEPH PROBST, by their next friend, FRANK J. GROB, Respondents, v. ST. LOUIS BASKET & BOX COMPANY, a corporation, Appellant.

St. Louis Court of Appeals.    Opinion Filed January 7, 1919.

1. **EVIDENCE: Admissions of Record: Judicial Admissions: Conclusive.** Judicial admissions are those made in court by a person's attorney for the purpose of being used as a substitute for the regular legal evidence of the facts at the trial, and when admissions of this character are formally made for the purpose of waiving certain proofs or rules of practice they are conclusive upon the client, and cannot be withdrawn.

2. **PLEADING: Waiver of Defects: Nonsuits: Appellate Practice.** Where counsel for defendant, in open court, during the progress of the trial, solemnly admitted that the present suit had been instituted by plaintiffs within one year from the date of the former judgment of nonsuit, the appellate court will refuse to reverse and remand a cause on the sole ground that plaintiff's petition was defective in failing to contain such necessary allegation, when the record of the case further shows that no objection was made by the defendant during the trial to the introduction of evidence on behalf of the plaintiffs to prove the truth of such fact.

3. **MASTER AND SERVANT: Injuries to Servant: Evidence.** In an action for the death of a servant caused by his falling into a tank of boiling water, *held*, under the pleadings, that testimony that there was no railing around the tank, and that whether or not a railing should and could have been placed in or on the tank, without interfering with the doing of the work, and which would have protected the men while at work about and upon the walls thereof from falling in, was admissible.

4. **WITNESSES: Expert Witness: Qualifications: Evidence.** In an action for the death of a servant caused by his falling into a tank of boiling water, a witness, who had been a carpenter for five years and had worked for defendant of and on for eight years, *held* competent and sufficiently qualified to testify that a railing could be built about the tank, which would safeguard the men from falling into the tank while at work, and that such a railing would not interfere with the practical operation of the tank.

5. **MASTER AND SERVANT: Injuries to Servant: Case for the Jury.** In an action for the death of a servant caused by his

falling into a tank of boiling water which was not protected by a railing, evidence examined and *held* that plaintiffs made out a case for the jury.

6. **APPELLATE PRACTICE:** Motion for New Trial: Assignments of Error in Giving and Refusing Instructions: Requirements for Review. Assignments of error in a motion for a new trial to the effect that the court erred in giving improper and erroneous instructions over the objections of defendant, and in refusing proper and correct instructions offered by defendant, do not measure up to the requirements and are insufficient to bring up for review on appeal the instructions given or refused by the trial court.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Thomas C. Hennings,* Judge.

AFFIRMED.

*Kelley & Starke* and *Chas. E. Morrow* for appellant.

The petition does not state a cause of action. The death is alleged to have occurred on January 25, 1913, and this suit was filed November 20, 1914, one year and ten months later. The allegations in the petition that plaintiffs did "within one year of the time of said death bring an action for damages on the same cause of action set forth in this petition and that plaintiffs suffered a non-suit in said action" is not sufficient, because it does not allege the date of said non-suit, nor that this action was brought within one year after said non-suit, as required by Statute. The limitation provided by the Damage Act creating this action is not merely a remedy, but it is a part of the right of action itself, and the petition must show that it was brought within the time allowed by law. Clark v. Railroad, 219 Mo. 524; Tiffany, Death By Wrongful Act, section 121.

*Leonard & Sibley* for respondents.

(1) Pleadings will be liberally construed to prevent a defeat of justice, particularly after verdict. A party on appeal will not be heard to argue the absence of pleading on evidence waived at the trial. Cobb v. Railroad, 149 Mo. 135, 143 and 144; Stamper v. Hammond P. Co., 180 S. W. 1076. (2) If the master is

negligent, his negligence is not excused by the fact that the negligence of the fellowservant of plaintiff contributed with that of the master to cause the injury. Radtke v. St. L. Basket & Box Co., 229 Mo. 15; Bluedorn v. Railroad, 108 Mo. 448; Young v. Iron Co., 103 Mo. 324; Craig v. Railroad, 54 Mo. App. 523; Moriarity v. Schwarzschild, etc., 132 Mo. App. 655; Rigsby v. Oil Well Supply Co., 115 Mo. App. 317; Mertz v. Rope Co., 174 Mo. App. 94; Musick v. Dald Packing Co., 58 Mo. App. 334; Hawarth v. Railroad, 94 Mo. App. 226; Cole v. Transit Co., 183 Mo. 81; Amick v. Kansas City, 187 S. W. 582. The dual capacity doctrine prevails in the master and servant law in Missouri. Fogarty v. St. L. Transfer Co., 180 Mo. 503; Rigsby v. Oil, etc., Co., 115 Mo. App. 313; Mertz v. Leschen Rope Co., 174 Mo. App. 94; Bien v. Transfer Co., 108 Mo. App. 399. A plaintiff, under the immediate control and direction of another employee of defendant, although they work together at a common work, are not fellowservants, but the other is the defendant's vice-principal. Burkard v. Rope Co., 217 Mo. 466; Cites-Moore v. Railroad, 85 Mo. 588; LaSalle v. Kosta, 190 Ill. 130; Rigsby v. Co., 115 Mo. App. 297. Whether one is a vice-principal or a fellow-servant is a question for the jury. Gale v. Helmbacher Co., 140 S. W. 77; Radtke v. St. L. B, & B, Co., 229 Mo. 1; Fogarty v. Transfer Co., 180 Mo. 490. (2a) A defeated party must specify in his motion for a new trial the particular instruction in which he claims error lies, otherwise he is held to have failed to have called them to the attention of the trial judge and they will not be considered on appeal. Maplegreen Co. v. Trust Co., 237 Mo. 350; Palski v. City et al., 264 Mo. 458; Wampler v. Railroad, 269 Mo. 472; K. C. D. & M. Co. v. Bates County, 201 S. W. 92; Lampe v. V. R., 202 S. W. 438; Nitchman v. V. R., 203 S. W. 491; Seitz v. Pelligreen Const. Co., 203 S. W. 503; Wynne v. Wagoner v. Co,, 204 S. W. 15. (3) When there is evidence that the alleged negligence of employer concurred with the act of a fellow-servant to cause the injuries complained of, it is not the law that the jury must find that the negli-

gence of defendant was the sole cause of the injuries. Newcomb v. Railroad, 169 Mo. 409. (4) It is proper to instruct the jury to consider the "age and condition in life" of the deceased father in awarding damages to surviving infant children and "age and condition" of the children. McKenzie v. V. R., 183 Mo. App. 312.

BECKER, J.—Plaintiffs sued by next friend for the alleged negligent killing of their father and recovered a judgment below against the defendant in the sum of $5500. In view of the assignments of error it will be necessary to set forth plaintiffs' petition, which is as follows:

"Plaintiffs state that they are the only lawful children of one John Probst, who was, on or about the 25th day of January, 1913, in the employ of defendant in said factory and engaged under the guidance and control of defendant, in removing certain logs from a tank or vat filled with boiling water and live steam, which said vat was, at the time, being operated by defendant in connection with its said business."

"Plaintiffs state that at said time said tank or vat was constructed of concrete and was rectangular in shape, with dimensions of about fourteen feet by twenty-eight feet; that it was sunk in the ground to a depth of several feet, and projected above the ground to a heighth of approximately two feet, nine inches; that the top of the walls of said tank were capped by a wooden plank approximately fourteen inches wide, which ran around the top of the walls of said tank; that the top of said tank was partly covered with loose planks or boards, and that said tank was not under any roof or other protection, but was exposed to the action of rain and the elements and was continually moist from the escaping steam and water; that on said date said John Probst was employed in removing the steamed or boiled logs from said tank as aforesaid; and, as was the custom of the employees of said department, as defendant well knew, or by the exercise

of reasonable care would have known, and as was the instruction of the defendant's servants and agents in charge of said department of said factory, was standing upon the tank for the purpose aforesaid."

"Plaintiffs state that at said time there was no railing or handhold or other safety appliance of any kind provided on or about said tank, although it would have been entirely practicable to have afforded some protection, and it was negligent in defendant not to do so."

"Plaintiffs state that defendant was maintaining and operating in said factory, at the times hereinabove referred to, a derrick, which was situated near the south wall of said tank, and was used for the purpose of hoisting logs out of the said tank; that said derrick was exposed to the action of the steam and rain and the elements, as was also said vat or tank; that in consequence the wooden planks around the top of the wall of said tank, as well as the wooden cover thereof and the said derrick, were wet and slippery and the rope in said derrick was new and stiff and swollen and could be moved through the blocks in said derrick only with great difficulty, and all of said apparatus was in unsafe and improper and dangerous condition, as defendant well knew, or by the exercise of reasonable care would have known, and this condition was due to defendant's negligence and carelessness."

"Plaintiffs further state that the poles and hooks provided by defendant at said time for the use of plaintiff and other employees in getting the logs out of said vat were too short, defective, and not properly constructed for the purpose intended, and were dangerous for the use of plaintiff and other employees."

"Plaintiffs state that under all these dangerous conditions, which plaintiffs allege existed long prior to and on or about the said 25th day of January, 1913, said John Probst was instructed by defendant just before the scalding hereinafter alleged, to take logs out of said tank, and was repeatedly instructed and re-

quired to hasten in his work so as to render it impossible for him to safeguard himself against the consequences of the dangerous and negligent conditions above described; that at said time the water in said tank had been carelessly and negligently permitted by defendant to reach so low a stage that it was three or four feet below the top of the walls of said tank, so as to make it very difficult to get logs out of same; and plaintiffs state that while the said John Probst was standing upon the south wall of said tank and endeavoring to reach the logs with the defective poles and hooks described and while bending over for that purpose, said derrick swung near him and lightly touched him, or attracted his attention, and his foot slipped upon the wet and slippery footing aforesaid, and he fell into the said vat, all because of defendant's negligence and carelessness as aforesaid."

"Plaintiffs further state that the said derrick was, at said time, caused to swing, as aforesaid, by the endeavor of defendant's representatives in charge of said operations to straighten out the rope in said derrick, which operation was rendered unreasonably difficult by reason of the unsafe and negligent condition of the derrick and its equipment as aforesaid, and in pulling at the rope for the purpose above set out, the derrick was unexpectedly caused to swing near or past the said John Probst."

"Plaintiffs further state that as a result of the carelessness of said defendant as above set out and in consequence of the falling into said vat as above described, the said John Probst was scalded and burned over his whole body."

"Plaintiffs further state that he was removed to the Alexian Brothers Hospital in said city of St. Louis, where he died a few hours later from his said injuries."

"Plaintiffs state that defendant provided and maintained all the said apparatus and equipment, and controlled all the methods of operation used in said factory,

and that defendant was negligent and careless therein in that the same were totally inadequate and unsafe and dangerous, as defendant knew, or would have known by the exercise of reasonable care, and had it not been for defendant's said negligence and carelessness the said injuries and death would not have occurred.''

''Plaintiffs further state that they are the only lawful children the said John Probst ever had, and that he has no other lawful child or children; that their mother, Elizabeth Probst, was at all times hereinabove mentioned the lawful wife of the said John Probst; that an action accrued to her as such wife because of the death, in the manner above related, of the said John Probst, but that the said mother, Elizabeth Probst, never brought or prosecuted any action against this defendant for causing such death, within the period of six months after such death, as allowed by the statutes of his State to said mother, and by reason whereof a cause of action has accrued to plaintiffs, the minor children of said deceased John Probst.''

''Plaintiffs further state that they did heretofore and within one year of the time of said death bring an action for damages against the defendant herein on the same cause of action set forth in this petition, and that plaintiffs suffered a nonsuit in said action.''

''Plaintiffs state that because of the negligence of defendant in causing the death of their father as above set forth they have been damaged in the sum of ten thousand ($10,000) dollars, for which sum and the costs of this action they pray judgment.''

Defendant filed the following answer: First, a general denial; Second, a plea of contributory negligence. The reply was a general denial.

John Probst, deceased, was in th employ of the defendant company at its factory in the city of St. Louis, and on the 25th day of January, 1913, was so burned by hot water in a vat or tank about which he was working that he thereafter died on the following day. He left a widow and two minor children, the plaintiffs herein, surviving him.

In the conduct of its business defendant used certain saws for the purpose of sawing logs into veneer. All logs had to be steamed and for that purpose defendant had a number of vats or tanks constructed of concrete in which water was placed and heated to a boiling point by steam. The logs were put into the tanks and while being steamed planks or boards were laid over the top of the tanks to keep in the steam. After the logs were sufficiently steamed the boards were removed from the top of the tanks so that the logs could be taken out.

The tank or vat in question was constructed of concrete, twenty-four feet north and south, by fourteen feet east and west, and was about five or six feet deep from the top of the walls to the bottom of the vat. The top of the south wall of this tank was thirty-three inches above the ground. There was a concrete girder thirty inches wide across said tank from east to west and in the center thereof. About midway and about two feet south of the south wall was a derrick with a boom about eighteen feet long, equipped with ropes and pulleys to which iron tongs or hooks were attached. By use of these tongs the logs could be grappled and then raised up with a windlass and pulleys until the log was high enough to clear the south wall of the tank. The derrick was so situated that the boom could be swung over the tank and the logs be picked up and then pulled from the tank past the wall of the tank until the logs were suspended over trucks on a miniature railway, the logs were then lowered onto the truck which carried them to the veneering machines near by. Iron poles about ten feet long with a spike and hook on one end were used to catch hold and pull or push the logs over near to the south wall of the tank so that they could be hooked and then hoisted by the derrick and placed upon the trucks of this railway. Along the south wall of the tank, which was thirty-three inches above the ground, was a wooden walk or runway along the ground. On the top of the south wall and running the full length thereof, there was an oak beam twelve or fourteen inches wide, termed a cap joist.

Henry Rocklage was superintendent for the defendant company, while Julius Reidel was foreman. Mischa Lazaroff was a helper at what is termed a peeler machine, and one of his duties was to get logs out of the tank that were required for the peeler machine at which he worked. Lazaroff was authorized to get John Probst or Frederick Bohne, or both, to assist him when he was taking logs out of the tank, and Probst and Bohne had been instructed to that effect by Reidel, the foreman.

The testimony shows that on the day in question Lazaroff, was getting out logs from the tank with the assistance of Bohne, who was handling the crank at the derrick for him, and that Probst was helping to push the logs by means of and with the aid of one of the ten feet spike poles over to a point near the south wall so that Lazaroff could attach the tongs or hooks to the logs for the purpose of raising them out of the tank by means of the derrick. To do so Probst had climbed upon and was standing upon the south wall of the tank.

The testimony shows that just before Probst was precipitated into the vat or tank he was standing on the south wall about midway from east to west, while Lazaroff was standing on the walk immediately south of the south wall of the vat, having just removed the hooks of the derrick from the log which had been lowered onto the truck standing on the railway tracks next to the tank; that Bohne was standing at the upright of the derrick turning the crank, when Lazaroff, in order to get the ropes, pulleys and tongs out of his way, gave them a push which caused the derrick and the ropes, pulleys and tongs attached thereto to swing out over the tank. The two planks which formed the boom of the derrick and which extended diagonally from the base of the upright of the derrick to the end of the arm which ran from the top of the upright at right angles with it, struck the top of the south wall of the tank.

There is some conflict of testimony as to whether or not this boom struck Probst and knocked him into the

tank. A witness for the plaintiffs, who, when a witness at the coroner's inquest and also at a former trial of the case had testified that a part of the derrick struck Probst and precipitated him into the tank, at the present trial testified: "Q. Now, then, did you see anything hit the body of Probst at the time or incidentally before he fell in? A. No, sir." On cross-examination he testified: "Q. But why did you tell the jury that you did not see anything strike him today when you swore under oath, and you admit you swore under oath before Judge Fisher that you saw the boom of the derrick strike him in the back and instantaneously he went into the vat? A. It went toward him. I don't know just exactly whether it struck him or not. It went toward him; I can't say it struck him or not. Q. You did not see Mr. Probst fall into the vat until the derrick swung north, did you? A. No, sir. Q. And you did not see him fall in until Lazaroff had swung the boom of the derrick north, did you? A. No, sir. Q. And when you saw it come over there, then for the first time was when you saw him go into the vat, wasn't it? A. I saw him after he was in. Q. That was the first time you saw him start in the vat, wasn't it? A. Yes, sir." Lazaroff a witness for the defendant testified that he saw the boom strike Probst and Probst fell into the vat.

The testimony on behalf of the plaintiff tended to show that the employees of the defendant company had, for a long time prior to the date upon which the deceased met with his injuries from which he died, been in the habit of getting up on the top of the walls of the tank in order to take out logs, and that this had been done in the presence of the superintendent and foreman. There was testimony on the part of the plantiffs to prove that there were no handholds or rails along the tank and that a railing could have been placed along the inside of the tank in question without materially interfering with the work.

According to defendant's testimony the men were instructed not to get upon the walls of the tank in

taking out the logs and the superintendent and foreman of the defendant company each testified that they had not gotten onto the walls themselves for that purpose nor had they seen any of their employees get onto the walls while taking out logs. They further testified that a man could stand by the side of the tank and that with the aid of the poles provided by the company they could pull or push the logs to the place required; that when a log was lifted out of the water in the tank, the other logs, by reason thereof, would generally move within reach of the man handling the ten foot pole, but that there were occasions when the logs could not be reached; that when that occurred the men could, by walking around to the other side of the tank, push the logs across to the point desired.

There is no controversy but that when the boards were removed from the top of the tank, after the process of steaming was complete, that steam would rise from the tank and condensation take place as the result of which water would be precipitated on to the top of the walls of the tank, and there was testimony adduced on behalf of plaintiffs that the effect of this water thus falling on to the top of the walls of the tank made it wet and slippery; also that when the logs were lifted out of the water and swung across the walls more or less water would drop on to the walls at the place where the log passed over, and that the dripping of this water was unavoidable.

At the close of plaintiffs' case and again at the close of all the evidence the defendant offered an instruction in the nature of a demurrer, which the court refused, and defendant excepted thereto.

The court in submitting the case to the jury upon instructions withdrew from their consideration the following charges of negligence:

"(1) That the tank, or planks, boards or timbers laid on the wall of said tank were continuously moist from escaping steam and water. (2) That the derrick mentioned in the evidence was moist or slippery. (3) That the rope in the derrick mentioned in the

evidence was swollen with moisture and could not be moved through the blocks in said derrick except with great difficulty.   (4) That the poles or hooks provided by the defendant for use of its employes were too short and not properly constructed for the purpose for which they were being used, or that said hooks or poles were dangerous for the use of said employes. (5) That John Probst, deceased, was instructed by defendant or its agents or servants to hasten in his work, or was required to proceed with speed or haste rendering it impossible for him to safeguard himself. (6) That the defendant negligently and carelessly permitted the water of the tank mentioned in the evidence to reach so low a stage that it was three or four feet below the top of the wall of said tank, and as to those issues we have not mentioned the evidence offered by the plaintiffs in an effort to prove them.''

I.

It will be noted that the defendant did not demur to plaintiffs' petition but filed an answer on the merits and contented itself, when plaintiff at the trial had their first witness sworn, with interposing an objection in the nature of a demurrer *ore tenus*.  The record on this point shows that counsel for defendant stated: ''After the first witness is sworn and before any evidence is introduced the defendant objects to the introduction of any evidence because the petition does not state facts sufficient to constitute a cause of action.   The Court:   Objection will be overruled.''

The parties then proceeded to trial on the issues raised by the pleadings.   Neither before nor during, or after the trial did counsel for defendant point out to the trial court wherein he thought the petition did not state a cause of action, but here on appeal learned counsel for appellant argues with great earnestness that plaintiffs' petition does not state a cause of action because it fails to allege the time when the nonsuit was had, and that the present action was brought within one year after the judgment of nonsuit against plain-

tiffs. In considering this point we feel it necessary to here set forth that part of the record which shows what took place at the trial when the plaintiffs offered to introduce evidence showing the date of the nonsuit and the date when this suit was filed. It is as follows:

"Mr. Leonard (attorney for plaintiffs): We offer in evidence the files in the case, number 86,879, entitled Elizabeth Probst, et al. v. St. Louis Basket and Box Company, and files in case 94,140, Elizabeth Probst, et al. v. St. Louis Basket and Box Company, being suits filed in this circuit court.

"Mr. Kelly, (attorney for defendant): Would like the gentleman to indicate the purpose of your first offer.

"The Court: Don't know the purpose of either one of them. For what purpose?

"Mr. Leonard: To show the statute in regard to the time for filing suit has been properly made.

"The Court: You limit the offer for the purpose of showing the date of the filing do you?

"Mr. Leonard: That is, I think, the only object I have in mind right now.

"The Court: You are offering the whole file.

"Mr. Kelley: Why, your Honor, would a suit filed by the then plaintiff, mother of these children Mrs. Elizabeth Lavere Probst, have anything to do with showing that the children's suit was filed within the period of limitation? It is not competent for any purpose.

"The Court: Do you admit filed in time?

"Mr. Kelley: *It is; yes, sir, the children's suit was.*

"Mr. Leonard: Of course, the question of a nonsuit, we would have to file suit again a year from the date of the nonsuit, that only would be—

"Mr. Kelly (interrupting) *He did that.*

"Mr. Leonard: I have got to prove it, prove my case.

"Mr. Kelley: *I will admit he filed suit within a year after the nonsuit, no use denying the records.* I object to the files.

"Mr. Leonard: We offer in evidence the files in the case on trial of Elizabeth Lavere Probst against St. Louis Basket and Box Company, being number 94,140.

"Mr. Kelley: No objection to that, my admission covers it; I have not any objection, the other one I do object to; files in suit by the mother.

"The Court: Objection to the files in the mother's suit is sustained; the other files will be admitted."

"The admission of attorneys of record bind their clients, in all matters relating to the progress and trial of the cause; but, to this end, they must be distinct and formal or such as are termed solemn admissions, made for the express purpose of alleviating the stringency of some rule of practice, or of dispensing with a formal proof of some fact at the trial." [Greenleaf on Evidence (16 Ed.), sec. 186.]

"Judicial admissions, or those made in court by the person's attorney, generally appear either of record as in the pleading, or in the solemn admissions of the attorney made for the purpose of being used as a substitute for the regular, legal evidence of the facts at the trial, or in a case stated for the opinion of the court." [Greenleaf on Evidence (16 Ed.), sec. 205.]

"When admissions of this character are formally made for the purpose of waiving certain proofs or rules of practice they are *conclusive* upon the client and cannot be withdrawn. It would operate as a fraud upon the adverse party, if, after he had been thus induced to withhold necessary proofs he should be compelled to prove the facts which had been admitted, or to submit to defeat." [Jones on Evidence (2 Ed.), sec. 257, and cases there cited.]

Defendant's solemn or judicial admission we hold was tantamount to a waiver of the fact that plaintiffs' petition failed to state a cause of action in that it did not allege that the present suit was filed within one year of the day on which the judgment of nonsuit had been entered against plaintiffs in their original suit. It would be extremely technical and almost unparalleled in our jurisprudence for us to hold otherwise. We re-

fuse to reverse and remand this cause on the sole ground that plaintiffs' petition was defective in failing to contain a necessary allegation when the record of the case shows that no objection was made by the defendant during the trial, to the introduction of evidence on behalf of the plaintiffs to prove the truth of such fact, the allegation of which was omitted from plaintiffs' petition, and when counsel for defendant, in open court, during the progress of the trial, solemnly admitted that the present suit had been instituted by plaintiffs within one year from the date of the former judgment of nonsuit, and as the attorney for defendant put it, "because there is no use in denying the record." To thus lie in wait for an adversary and here raise the point of the omission of a necessary fact in plaintiffs' petition, as grounds for a reversal, which fact defendant has solemnly admitted the truth of during the trial of the case, is a practice which we will not subscribe to. It is a practice which if countenanced would, in our judgment, not alone be a large step backward, but would subject, and very properly so, the court which would uphold it to scathing criticism. [See Tebean v. Ridge, 261 Mo. 547, 1. c. 558, et seq., 170 S. W. 871 ad cases cited.]

Had objection been made at the trial to the introduction of any testimony by plaintiffs on the point in question it would have presented an entirely different problem for solution. In arriving at our conclusion, as above set out, we have done so after a careful consideration of the cases relied on by appellant, namely, Chandler v. Ry. Co., 251 Mo. 592, 1. c. 598, 599, 158 S. W. 18; Clark v. Ry. Co., 219 Mo. 524, 118 S. W. 40; Troll v. Gas Light Co., 182 Mo. App. 600, 169 S. W. 337, the facts in each of which are readily distinguishable from those in the case at bar, and we hold are for that reason not applicable here. We accordingly rule this assignment of error against appellant.

## II.

It is next urged that the trial court erred in admitting evidence that there was no railing around the

tank in question, and that a railing could have been placed in or on said tank without interfering with the work.

This point is without merit in that plaintiffs' petition particularly alleges and there was proof adduced on behalf of plaintiffs sufficient to make this a question for the jury. There was testimony to the effect that the men usually got on top of this south wall of the tank in order to be able to push the logs to the point in the tank where they could be attached to the derrick and lifted out; that this was done with the full knowledge of the superintendent and foreman and done in their sight and presence. This testimony, taken together with the admiited fact that there was no railing around the tank, and that the tank contained boiling water, and that the top of the walls of the tank were usually wet and slippery from the water that was precipitated from the condensation of the steam which arose from the tank when the boards covering the tank were removed whenever the batch of logs being steamed had been sufficiently heated, was sufficient to permit evidence to be introduced on the question of whether or not a railing should and could have been placed in or on the tank, without interfering with the doing of the work, and which would have protected the men while at work about and upon the walls thereof from falling in.

## III.

The next objection is that the witness, Bohne, for plaintiffs, who was permitted to testify that a railing could be built about the tank, which would safeguard the men from falling into the tank while getting the logs out, and that such a railing would not interfere with the practical operation of the tank, was not sufficiently qualified to make the said witness competent to give an opinion on such matters. According to Bohne's testimony he had a mechanical trade, he was a carpenter and had been such for five years, and had worked off and on for eight years at the defendant company cutting logs and filling steam boxes, helping

to put logs into, and helping to take logs out of the tanks. In the light of this testimony we are unwilling to rule that allowing this witness to testify on the point in question was reversible error.

## IV.

A reading of the statement of facts which we have set out at great length above is sufficient, without a reiteration here, to show that plaintiffs made out a case for the jury. While the testimony of the main witness for plaintiffs was in direct conflict to what the same witness had testified to at a former trial, and also in direct conflict to what he had testified to at the coroner's inquest, it did not any the less make the case one for the jury, the determination of the credibility of the witness being exclusively a function of the jury.

## V.

The learned counsel for appellant next sets up a number of assignments of error based upon the giving or the refusing of instructions by the court.

When we examine the defendant's motion for new trial we note that with reference to these assignments it merely states that, "(7) The court, at the instance and request of plaintiffs and over the objection of defendant, erred in giving improper and erroneous instructions to the jury." "(9) The court erred in refusing proper and correct instructions offered and requested by defendant."

Under our interpretation of the most recent expressions of the supreme court on the question of what is sufficient in a motion for new trial to bring up for review on appeal the instructions given, or the refusal by a trial court, these said assignments by defendant in its motion for new trial, do not measure up to the requirements. [Wampler v. Railroad Co., 269 Mo. 464, l. c. 472, 190 S. W. 908; Kansas City D. & M. v. Bates County, 201 S. W. 92. See, also, Lampe v. United Railways Co., 202 S. W. 438; Witchman v. United Railways Co., 203 S. W. 491.]

However we have examined each of these assignments of error relating to instructions and have concluded each of them to be without merit. Furthermore the instructions in the case show that the learned trial judge very properly narrowed the issues in the case by instructions withdrawing from the jury's consideration such issues as had not been supported by testimony adduced on plaintiffs' behalf, and that the instructions as to the remaining issues, covered the case fully and fairly.

Finding no prejudicial error in the record the judgment is accordingly affirmed.

*Reynolds, P. J.,* and *Allen, J.,* concur.