GLUECK & CO., PLAINTIFF IN ERROR, v. M. POWELL ET AL., DEFENDANTS IN ERROR.—61 S. W. (2d) 406.

Kansas City Court of Appeals, May 22, 1933.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau* for plaintiff in error.

*Ernest S. Ellis* and *Paul S. Kelly* for defendent in error.

BLAND, J.—This is an appeal from an order refusing to set aside an involuntary nonsuit. The action arose in the justice court and is to replevin an electric refrigerator of the value of $278.

The facts show that T. C. Mitchell, Jr., and his brother, B. G. Mitchell, were partners, developing real estate in Kansas City; that T. C. Mitchell, Jr., owned an apartment building in said city, which he and his brother were operating; that on or about February 16, 1929, T. C. Mitchell, Jr., directed plaintiff to deliver the refrigerator in question to said apartment house. This refrigerator was ordered and delivered under an oral contract made about a year before, in which plaintiff and the said T. C. Mitchell, Jr., agreed that Mitchell, from time to time, might order electric refrigerators from plaintiff and place them in any of the apartments that might be vacant. Electric refrigerators in the apartments made the latter more attractive to tenants and those who wanted the use of a refrigerator would pay five dollars per month more in rent for an apartment equipped with one. Mitchell would place a refrigerator in a vacant apartment and if the tenant, who afterwards rented it, desired a refrigerator it would be paid for, otherwise it would be returned to plaintiff. The understanding with plaintiff was that if Mitchell kept the refrigerator it was to be paid for, but if he did not keep it was to be returned and not paid for. In other words, according to plaintiff's testimony, the refrigerator in question as well as eleven others that were ordered during the year were sent to the premises by plaintiff under a contract of "sale or return," wherein the purchaser of the property is given the option to return it if he likes and no title passes until the option is exercised. [See 6 C. J. p. 1095.] No witness could recall whether the apartment in which the refrigerator in question was placed was ever rented.

The evidence shows that sometimes a refrigerator would be ordered from plaintiff and placed in a vacant apartment and if the new

tenant did not want it, the refrigerator would be moved into another vacant apartment, etc. B. G. Mitchell testified:

"Q. Has there been a tendency in the last three years in prospective tenants demanding electric refrigeration in apartments? A. I think it is customary where you want to hold up your rents, it is, yes, sir."

The evidence shows that one of these refrigerators weighed 500 pounds; that two experienced men could "handle it." "There is a unit at the top of the equipment and they can be moved separately by two men." The only way that the refrigerator in question was attached to the realty was by means of a cord, one end of which was inserted into a socket on the back of the refrigerator and the other into a light socket on the wall.

On July 1, 1929, T. C. Mitchell, Jr., conveyed the apartment by warranty deed to one Bradshaw. On June 18, 1930, Bradshaw conveyed the property by second deed of trust to secure his note for $36,200, to the defendant, Kelley, trustee for the defendant, Powell.

The warranty deed from Mitchell to Bradshaw recited that it conveyed the real estate and "all and singular, the rights, privileges, . . . thereto belonging, or in any wise appertaining" thereto. The deed of trust conveyed the property "with the appurtenances." Neither deed purported to or conveyed any personal property.

On August 19, 1930, default having occurred under the deed of trust, the real estate was sold at trustee's sale and was conveyed by trustee's deed to the defendant, Powell.

B. G. Mitchell testified that a short time before the property was conveyed to Bradshaw, he called the office of the plaintiff and told it to come and get the refrigerator in controversy, and that either just before or after the foreclosure, he told the trustee that there were two refrigerators in the apartment building that did not belong to it.

Both of the Mitchells testified that they had not purchased or accepted the refrigerator and did not claim any interest in it. Plaintiff carried "this refrigerator" as a regular open charge account against the Mitchells and the books of plaintiff, upon their face, would indicate that an outright sale of the refrigerator had been made, but this was sought to be explained by a witness for the plaintiff, who stated that it did not have any separate consignment accounts at the time the refrigerator in question was delivered and the matter was carried on its books as a charge account merely for the purpose of keeping a record of the transaction. All of the twelve refrigerators were paid for but the one in suit and one other. No demand was made by the plaintiff upon any one for the payment of the purchase price of the one sued for. No inquiry was ever made by plaintiff regarding it after it was delivered, nor did it attempt to ascertain whether the apartment in which the refrigerator had

been placed was leased or rented, or as to whether the refrigerator was used.

On April 23, 1930, a bill of sale was executed by T. C. Mitchell, Jr., conveying title to the refrigerator to the plaintiff. Mitchell testified that he did not have any interest in the machine at the time he gave the bill of sale. The record shows that this was given at the request of the plaintiff's attorney, for the reason that plaintiff was unable to locate the refrigerator and the bill of sale was taken to give it "recourse on the warranty contained in that bill of sale in the event we were not successful in obtaining possession of the machines."

It is insisted that the court erred in refusing to set aside the involuntary nonsuit. In this connection it is urged that, because the refrigerator was not a fixture, it was not conveyed by the warranty deed from T. C. Mitchell to Bradshaw, nor by the subsequent deeds, by which defendant, Powell, obtained title to the real estate.

Whether an article becomes a fixture depends a good deal upon the relationship of the parties. As was stated in St. Louis Radiator Co. v. Carroll, 73 Mo. App. 315, 319:

"While the decisions on this subject depend much on the facts of the particular case, the principle to be extracted from them is that a fixture of the class under discussion is made up of three elements, annexation, adaption and intent. Of these in modern times the latter two are more important than the one relating to the method by which the chattel is attached to the freehold. Such annexation, though slight and easily displaced, will not prevent an article becoming a fixture which is adapted to the proper use of a building, and which was placed therein by the owner with the intent of forming a part of the special object and design for which the building was constructed."

In Donnewald v. The Turner Real Estate Co., 44 Mo. App. 350, 354, the St. Louis Court of Appeals, quoting from a New Hampshire case said:

" 'Some of the excepted cases seem to have made the question depend upon the character of the fastening, whether slight or otherwise. But this is a criterion of questionable character, not sustained by the weight of decisions. More depends upon the nature of the article, and of its use as connected with the use of the freehold.' "

In Banner Iron Works v. Aetna Iron Works, 143 Mo. App. 1, 6, the court said:

"If the thing furnished was necessary to that work or business, or necessary to the purpose for which the building was designed and used, or was a convenient accessory or commonly employed in connection with such business, the intention of the proprietor of the establishment to annex it permanently to the realty may be inferred."

As between the parties to the sale of an article installed in a building, much depends upon the agreement between them as to whether it is to become a fixture or remain personalty, but as between the seller of such an article and a subsequent purchaser or mortgagee of the real estate, such an agreement, plays no part. [26 C. J. p. 681.] In this case the refrigerator in question was adapted to the purpose for which the building was constructed and enhanced its rental value. The refrigerator was intended to be rented with an apartment as a part thereof. It was not placed therein by the tenant, but by the landlord, the owner of the building, and remained there when a tenant would leave. Electrical refrigeration is customary equipment in modern apartments.

We are of the opinion that the refrigerator in question, as between the plaintiff and the subsequent purchaser and mortgagee, became a fixture, within the meaning of the law, Kelvinator St. Louis, Inc., v. Schader, 225 Mo. App. 479; Hanson v. Vose, 144 Minn. 264, 268, 269; Williams v. London, 115 N. Y. Supp. 547; City National Bank v. Cascade Apt. Co. (Minn.), 229 N. W. 349; In re Danville Hotel Co., 38 Fed. (2d) 10; Public Service E. G. Co. v. Sandord (N. J.), 161 Atl. 507, and the fact that, if an apartment could not be rented for more with a refrigerator in it than it could without it, the refrigerator would be moved into a vacant apartment, is not a controlling feature of the case.

We have examined the cases cited by plaintiff and find them not in point. In the case of Rogers v. Crowe, 40 Mo. 91, it was held that lamps, chandeliers, candelabra, sconces, brackets, and the various contrivances for lighting houses, were not fixtures. That was because in those times these things were not regarded as a part of the property but belonged to the tenant who installed them.

The case of Loan v. Gregg, 55 Mo. App. 581, involved a mirror, which hung over a mantle in the usual way, not being permanently attached to the wall. There is quite a difference between a mirror hanging on a wall and a refrigerator in an apartment building. It is a well known fact that people in cities have refrigerators of some kind and when they live in apartments, the evidence shows, as before stated, that it is usual and customary for the landlord to furnish them, as was done in this case. Refrigeration of some kind is now regarded as a necessity and adds to the rental value of the premises. There is no evidence that it was intended that the refrigerator in question should ever be removed from the building and, beyond doubt, it became a part of its equipment and clearly a fixture, within the meaning of the law. It was "a permanent accession to the freehold." [Tyler v. White, 68 Mo. App. 607, 610.]

There is a controversy between the parties as to whether title to the refrigerator in question passed to T. C. Mitchell, Jr., at the time

it was delivered, or at least by the time the building was conveyed by trustee's deed, defendant insisting that the bill of sale given by T. C. Mitchell, Jr., on April 23, 1930, is conclusive upon the subject that title did pass. However, whether it did or not, plaintiff is in no position to urge that it did not become a fixture. Both the warranty deed and the deed of trust were made without notice to the grantee and the mortgagee of the fact, if it be a fact, that the refrigerator was delivered to T. C. Mitchell, Jr., as bailee, with the option to purchase and, when the warranty deed and mortgage were made, this and the other eleven refrigerators were located in the building and from all appearances to one unacquainted with the agreement between plaintiff and T. C. Mitchell, Jr., they were fixtures. Plaintiff having permitted this appearance of things to continue, it cannot now say that it was not a fixture. [Climer v. Wallace, 28 Mo. 556; Union C. L. Ins. Co. v. Tillery, 152 Mo. 421.] We think there can be no question but that the title to the refrigerator passed under the deeds to the real estate. [The State Savs. Bank v. Kercheval, 65 Mo. 682; Thomas v. Davis, 76 Mo. 72; Patton v. Brick Co., 167 Mo. App. 8; Stone v. Suckle (Ark.), 224 S. W. 735.]

There is some evidence tending to show that, a short time before the foreclosure sale, the trustee in the deed of trust was notified by B. G. Mitchell that the refrigerator belonged to plaintiff. But this was not sufficient notice to effect the situation, because neither the grantee in the warranty deed, nor the mortgagee or trustee in the deed of trust had notice, at the time of the execution of the deeds. [See 26 C. J. p. 681.] Of course, if the transaction between plaintiff and T. C. Mitchell, Jr., amounted to a conditional sales contract, under the provisions of Section 3125, Revised Statutes 1929, there being no recording of the contract, the sale was void as to defendant, Powell. [26 C. J. pp. 682, 683; Patton v. Brick Co., supra.] The judgment is affirmed. All concur.