Frank L. STOCKTON and Clora Lee
Stockton, Appellants,

v.

Robert L. TESTER, Velma Tester and James
Baker, Sheriff of Wright County,
Missouri, Respondents.

No. 7279.

Springfield Court of Appeals.

Missouri.

Dec. 21, 1954.

Haymes & Haymes, Marshfield, James P. Roach, Camdenton, for plaintiff appellants.

Garner L. Moody, Hartville, Hugh Phillips, Camdenton, M. J. Huffman, Hartville, for defendant respondents.

RUARK, Judge.

This is a contest between the appellants Stockton, as chattel mortgagees, and the respondents Tester, as the owners of the real estate, over five Jamison insulated cold storage doors and some beef tracking which were formerly installed in a locker plant.

About 1946 defendants Tester constructed a building which they leased to a Mr. and Mrs. Cooper for the purpose of operating a locker plant, and the Coopers installed the locker equipment. In August 1947 the

Coopers sold the locker plant to a Mr. and Mrs. Merkel. At that time plaintiffs Stockton loaned the Merkels $8,000, presumably to aid in the purchase of the plant, and Merkels gave plaintiffs a note secured by chattel mortgage on all of the equipment, the itemization of which included the doors and beef tracking here in question.

The tenants Merkel were not successful in their operation and fell behind in the chattel mortgage payments and in their rent due to the owners Tester. In July 1951 plaintiffs entered the building and were engaged in removing the locker equipment when the same was seized by the sheriff under a writ of attachment issued upon defendants' petition and affidavit based on nonpayment of rent. The sheriff made his return non est as to personal service on the Merkels, but he further executed the writ by seizing all of the machinery and equipment in the plant (consisting of a large number of items, most of which are not here involved) as the personal property of the Merkels. Thereupon plaintiffs brought this replevin suit against defendants Tester and the sheriff. Defendants Tester, in their amended answer and counterclaim, denied the wrongful taking or detention, admitted that they were the plaintiffs in the attachment suit, "which suit involves the identical property" described in the petition, set up a value for the property, prayed for its return and damages for its taking; and defendants further claimed damages by way of counterclaim because plaintiffs had gone into the building and taken away certain of the contents, including that property here involved, and (also) that plaintiffs had damaged the building in so doing. The attachment and replevin cases were consolidated, a jury was waived and the case was tried by the court. The judgment of the court was that the plaintiffs were the owners of and entitled to all of the property described in plaintiffs' petition except the five Jamison doors with facing and framework for the same and the beef tracking, piping and metal fastenings. As to such articles, the court found they were affixed to the realty and therefore had become the property of the defendants. These articles having been

sold by plaintiffs, the court found their value to be $450 and rendered judgment in favor of the defendants for such sum, plus $50 for damage to the realty in removing it. The costs were taxed one-half each against the plaintiffs and defendants.

The whole evidence showed that the building was originally built and leased to Coopers for use as a locker plant and that the whole design of the building itself was such that it was fitted for such use. All of the locker equipment itself, including those articles here in question, was installed by the then tenant, Cooper, who later sold to the Merkels, plaintiffs' mortgagors. It was testified by owner Tester that they (the owners Tester) had agreed with Cooper (the then prospective tenant) to erect a building for such purposes at a cost of not to exceed $5,000. That in concluding the building it was discovered that the cost would be approximately $5,900 and that, in order to secure the completion of the building, Cooper agreed with the Testers as owners that any "permanent installation," including the articles here mentioned, would remain in and become a part of the realty and would not be removed therefrom. There is no controversy as to the fact that Cooper installed the equipment without financial aid from Testers, that the Coopers later sold to Merkels and that Merkels mortgaged the equipment to the plaintiffs.

The five Jamison doors were commercially constructed insulated doors which were made and installed as units, complete with frame. Each door in its frame was fitted in the space left for it in the wall or partition and was bolted to the wall by three- to four-inch leg screws, and the only thing necessary to complete the installation was to put caulking compound in any cracks which might develop in the fitting of the door.

As to the beef tracking, there was a dearth of evidence in respect to its description and nature of installation, but it appears to have been an overhead system, presumably erected and used inside the building for the purpose of hanging and moving sides of beef. This tracking was attached by

screws to its own subframing, and the subframing was in some manner attached to the ceiling.

The plaintiff-appellants contended that these articles were trade fixtures, remained the property of the tenants and were removable by them and were therefore subject to the chattel mortgage. The defendant-respondents contended that these articles entered into, were annexed and became a part of the realty.

One of the appellants' assignments here is that inasmuch as the defendants by their answer in the replevin case stated that all of the property involved was the identical property which had been attached in their suit against Merkels, they thus judicially admitted that the doors and tracking had not become a part of the realty.

A judicial admission is one made in or to the court for the purpose of dispensing with or as a substitute for the production of evidence. Normally it is an act or statement formally and deliberately made or done, as distinguished from an unintentional or quasi admission. The admission, to be binding, must be one of fact and not a conclusion of law. Probst v. St. Louis Basket & Box Co., 200 Mo.App. 568, 207 S.W. 891; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, loc.cit. 917; Pitcairn v. American Refrigerator Transit Co., 8 Cir., 101 F.2d 929; Wigmore on Evidence, 3rd Ed., vol. 4, sec. 2588, et seq.

Appellants cite in support of their contention Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S.W. 177; De Lorme v. St. Louis Public Service Co., Mo.App., 61 S.W.2d 247; and Hayes v. S. S. Kresge Co., Mo.App., 100 S.W.2d 325. In each of these cases the plaintiff in a damage suit testified contrary to facts which would permit recovery, and in the same case attempted to testify differently and in support of his cause of action, without offering any explanation of oversight, misunderstanding or lack of definite understanding. It may be stated that the rule pronounced by these cases seems to be limited to testimony given by the same party at the same trial and not at some previous proceeding in the case. But it would serve no purpose here to cite and discuss the cases so holding.

The answer of defendants simply admitted that the property involved was that also involved in the attachment suit. Defendants had procured issuance of a writ of attachment. The sheriff attached a large number of articles, a great many of which were obviously chattels, and his return (not the defendants') showed that he (the sheriff) had seized the listed items, including those in question here, "the same being the personal property of the within named Elmer C. Merkel and Roberta Margaret Merkel." The sheriff has many powers and his returns are in many instances conclusive; but we know of no law or authority which delegates to him the right to make judicial admissions binding upon litigants or their counsel. Assuming, however, the return of the sheriff to have been an admission of the defendants, which we do not, the statement by him that such articles were the personal property of the Merkels is at best only a legal conclusion on his part and is not a judicial admission that the doors and tracking had not been annexed to the realty. Furthermore, the parties and the court tried the case below upon the issue as to whether said articles had become annexed to the realty, and their construction of the issues will be given the same construction in disposing of the case on appeal. Kelley v. National Lead Co., 240 Mo.App. 47, 210 S.W.2d 728, loc.cit. 732.

Another point raised by the appellants is that the testimony of Robert L. Tester, one of the defendants, regarding the agreement with the tenant that certain property should remain with the building, was so contradictory that it had no probative value.

We think the testimony of Tester in respect to such claimed agreement was not and is not the determining factor on the question as to whether the articles had been annexed to and become a part of the freehold. The elements in making such determination are usually said to be those of

Annexation, Adaption and Intent. As between landlord and tenant and where the rights of third parties do not intervene, the intent is of paramount importance. But as between the owner of the building and creditors of the lessee it is of only coincidental importance and the question must be determined with more emphasis on the character of annexation and the uses to which the property is put. 2 Tiffany on Landlord and Tenant, sec. 240, p. 1572; Matz v. Miami Club Restaurant, Mo.App., 127 S.W.2d 738; Cunningham v. Von Mayes and Stubblefield, 194 Mo.App. 56, 182 S.W. 1059; Kelvinator St. Louis, Inc., v. Schader, 225 Mo.App. 479, 39 S.W.2d 385; Glueck & Co. v. Powell, 227 Mo.App. 1226, 61 S.W.2d 406; Esther v. Burke, 139 Mo.App. 267, 123 S.W. 72. Any secret intention or agreement not known to innocent purchasers or mortgagees should not be considered. However, the intention to annex may be and often is inferred from the circumstances surrounding the annexation, adaption and usage of the article.

The principal question is whether or not the doors and the beef tracking had become so annexed as to become a part of the freehold and thus lose their character as personalty. It is contended that they were trade fixtures and therefore removable by the tenant.

 Articles annexed to realty by a tenant for the purpose of carrying on a trade or business are considered as trade fixtures and are ordinarily removable by him. That the fixture is particularly adapted to a particular type of building does not (in itself) make it irremovable. If the article is placed in the building for the sole purpose of enabling the tenant to carry on his business, it is removable; but if the article is so placed as to make *the building itself* peculiarly adapted and more usable for the type of business, then it is not removable. 36 C.J.S., Fixtures, § 38, p. 973; Red Diamond Clothing Co. v. Steidemann, 169 Mo.App. 306, 152 S.W. 609; Banner Iron Works v. Aetna Iron Works, 143 Mo. App. 1, loc. cit. 6, 122 S.W. 762; Manufacturers Bank & Trust Co. of St. Louis v.

Lauchli, 8 Cir., 118 F.2d 607; Glueck & Co. v. Powell, supra; Kelvinator St. Louis, Inc., v. Schader, supra. It is said in 22 Am. Jur., sec. 57, p. 773, "In determining whether refrigerators or refrigerating systems become fixtures, the mode of annexation and adaptability of use seem to play a larger part in determining the intention of the parties than does the relationship between the parties. Hence, refrigerators particularly adapted or essential to the use to which the building is applied, and which are intended to be, and are, permanently and habitually used as a part of the property, become fixtures."

In Kelvinator St. Louis, Inc., v. Schader, above, it was held a refrigerating plant installed in an apartment house became a part of the realty. In Glueck v. Powell, above, an electric refrigerator was set into a vacant apartment in an apartment building for use by prospective tenants. The only annexation to the realty was by plugging the cord into a light socket on the wall. Such was held to be a part of the realty.

In the Red Diamond case, supra, it was held that a boiler, engine and steam pump and blow-off tank in a manufacturing plant were trade fixtures, but that the heating plant and sprinkling apparatus installed in the same building were not trade fixtures and could not be removed.

We concede, as was stated in Thomas v. Davis, 76 Mo. 72, loc. cit. 76, "It is difficult to determine the term 'fixtures,' and there is inextricable confusion, both in the text books and adjudged cases, as to what constitutes such an annexation of chattels to the realty, as to make them part, and pass by a conveyance, of the realty. An attempt to reconcile the authorities on the subject would be futile, and to review them would be an endless task."

One seeking further information (or confusion) on the subject may find it at 169 A.L.R. 478.

 In respect to the insulated doors, their very nature, when coupled with the nature and design of the building and

the purposes in so doing, made it apparent that they were annexed to the realty in order to make the structure itself more usable and adapted for a certain type of business. The use of the building itself was devoted to the refrigerating and storing of articles at a low temperature. The doors served as a part of the building to hold in the cold. It is our conclusion that they became a part of the building and were not removable as trade fixtures. The beef tracking, because of less explicit evidence on the question, presents a more difficult question, but it would appear that from what evidence the trial court had before it, it could properly be said that it also was a part of the structural portion of the building, placed there and used for the purpose of the enjoyment of the building itself. However, we do not find in the record any "piping and metal fastenings" in reference to such tracking, and because there does appear in the record evidence of other piping and possibly metal fasteners in reference to a water system and other articles which are not here in question, we think the judgment should be modified so as to include only such piping and metal fasteners as are a part of or an immediate adjunct to such beef tracking.

■ Appellants' assignment number 2 is that there is no substantial evidence as to the value of the doors and beef tracking, or the damage occasioned by their removal, and thus the finding of the court was speculation and conjecture. The defendant Tester was the only witness who testified to the value of the items as separate articles. He qualified himself to the extent that at the time the locker doors were removed he had priced doors of the same type with the manufacturers, and he based his estimate on the value of the tracking by measuring it and arriving at a price based on new tracking. The courts are liberal in permitting an owner to testify as to the value of his property. State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68; Walton v. A. B. C. Fireproof Warehouse Co., 233 Mo.App. 693, 124 S.W.2d 584; Baird v. Ellsworth Realty Co., Mo.App., 265 S.W.2d 770.

■ But Tester testified that the value of the five Jamison doors was $680 and the value of the beef tracking was $50, or a total of $730, whereas the total value found by the court was $450. If there were nothing else in the record bearing upon the value, then the finding of the court must have been speculative and conjectural. However, there was other evidence from which an inference of value could be drawn. The record showed that the original cost of the whole equipment was approximately $16,000, that plaintiffs made a loan on it for $8,000, that plaintiffs had sold other of the items at various and different sums totaling $3,625. The trial judge had before him the evidence in respect to the age of the equipment and some evidence as to its condition. His was a difficult task, and to reach his conclusion he was required to call upon every scrap of evidence and draw reasonable inferences therefrom, but we cannot say that the conclusion reached was speculative and not based on any evidence.

■ However, in regard to the award of $50 for damage caused by removal of the equipment, we have a different situation. The case was tried on the theory of the value of the articles removed and the physical damage to the building caused by such removal rather than diminution in value. There was some evidence that the removal of the doors left screw holes and unpainted strips behind the door facings, but there was nothing to show the monetary amount of this damage or the cost to repair it. There was some evidence as to what it cost to restore the building as a whole in order to make it suitable for the next tenant, but such restoration included items of greasy and damp floors, a cracked hot water heater and other matters which were not shown to be connected with the removal of the fixtures in question. It appears that an incoming tenant of the defendants made some changes in the building himself, particularly in regard to the water system, and he in fact removed the beef tracking and laid it outside the building (although it was taken by the plaintiffs

in their replevin action). Since the award of damage caused to the building had no basis in the evidence whereby the monetary value could be determined, the judgment should be modified to exclude such award.

Appellants' final assignment is that the plaintiffs were the prevailing party and, the action being one ex delicto, the court should have assessed all of the costs against the defendants. We think the appellants are correct. This was a suit in replevin over articles alleged to be of the value of $3,000 and which the evidence shows were sold for more than that amount. The judgment of the court was that the plaintiffs recover possession of all of such property except the doors and the tracking, which it found to be of the value of $450.

Section 514.110 RSMo 1949, V.A.M.S., provides that in all actions not founded on contract, if plaintiff recover any damages he shall recover his costs. Replevin suits are covered by this statute and the court has no discretion except to award the costs to the plaintiffs. O'Donniley v. Kinley, 220 Mo.App. 284, 286 S.W. 140; Hecht v. Heimann, 81 Mo.App. 370; Vineyard v. Lynch, 86 Mo. 684.

We hold and it is our judgment that plaintiffs are entitled to and shall have judgment of possession for all of the property and articles described in their petition, except five Jamison doors with facings and framework, and beef tracking with such piping and metal fastenings as are a part or adjunct thereof. That the five Jamison doors with facings and framework and beef tracking with such piping and metal fastenings as are a part thereof were the property of the defendants Tester and were converted by the plaintiffs and are of the value of $450, which amount the defendants shall have and recover of the plaintiffs; and it is our further judgment that plaintiffs have and recover of and from the defendants the costs of this cause.

McDOWELL, P. J., and STONE, J., concur.