W. G. Polk v. Missouri-Kansas-Texas Railroad Company, a Corporation, Appellant.—111 S. W. (2d) 138.

Division Two, December 17, 1937.

1214

*Carl S. Hoffman, W. H. Martin* and *Montgomery, Martin & Montgomery* for appellant.

*T. N. Haynes, Crouch & Crouch, Payne H. Ratner.* and *Clarence C. Chilcott* for respondent.

COOLEY, C.—Action for malicious prosecution. The petition was originally in two counts, the first being for false imprisonment, the second for malicious prosecution. At the close of the plaintiff's evidence he was required to elect on which count he would stand. He elected to stand on the second count. There was a verdict and judgment for the plaintiff for $20,000 actual and $2500 punitive damages, and the defendant appealed.

The alleged malicious prosecution was in a justice of the peace court in the city of Parsons, in Labette County, Kansas. It was initiated and prosecuted at the instance of agents and servants of defendant railroad company, acting within the scope of their employment. If their acts were malicious and without probable cause the defendant is liable. Plaintiff's petition sufficiently states a cause of action. Defendant's answer, after a general denial, pleaded a statute of Kansas declaring it burlary in the second degree, a felony, to break into a freight or express car with intent to steal or to commit any felony therein; that its agents who caused plaintiff's arrest and prosecution had reasonable cause to believe him guilty of such offense; that they made full and true disclosure of all the facts to the prosecuting attorney, who advised them that in his opinion plaintiff was guilty; and that the prosecution was instituted with the counsel and advice of said officer.

Plaintiff's evidence tended to show the following:

Defendant maintained extensive switch yards at Parsons, those here in question being known as the north yards, which embraced three subdivisions, called the west, east and Klondike yards, respectively. The leads for these yards run in a northwesterly and southeasterly direction. The lateral or classification tracks run northerly off the leads paralleling each other. The tracks in the west yard are farthest northwest and are numbered consecutively, 1, 2, 3, etc., from east to west, and are referred to in the evidence as west 1, west 2, etc. The tracks in the east yard are just east of those in the west yard and are numbered in like manner. The Klondike yard is east of the east yard. The west yard was used for classification, storage and for making up two local trains, known as the Cherokee and Joplin locals. Track west 3 was used in making up the Cherokee local.

As to the circumstances of plaintiff's arrest and prosecution his case rests mainly on his own testimony, which was to the following effect:

He was, and had been since 1918, employed by defendant as switchman. On the night in question he reported for duty at eleven-thirty P. M. His position was that of "long field man," his duties, among others, being to keep himself informed as to the room or space available on tracks where work was to be done by the switching crew and where trains were to be made up. His crew was engaged in breaking up two freight trains in the east yard, for purposes of classification and was also to make up the Cherokee and Joplin locals. The cabooses of the latter trains were set out on tracks west 5 and 6. When the work of the crew in the east yard was nearing completion plaintiff went into the west yard to see whether some cars previously "kicked in" on track west 2 had cleared the lead and whether there was room next the cabooses for making up the locals. For this purpose, in line with his duty, he walked north between tracks west 2 and 3. Looking between cars on tracks 3 and 4 he saw a caboose on track 5. In order to identify it, determine if it belonged to one of the locals to be made up and ascertain whether there was room between it and the lead for the balance of the local he went over to examine, climbing over cars or the couplings thereof on tracks west 3 and 4. As he climbed over the couplings, between cars on track 3, his electric lantern went out, due to some jolt or jar and he could not make it work. Arriving at the caboose on track 5 he lit a match to identify the caboose, ascertaining that it belonged to the Cherokee local. He climbed back over an oil tank car on track 4 and started walking south—toward the lead track on which the switch engine was working,—between tracks 3 and 4, when he was confronted by three men, armed with pistols and a shotgun, who arrested him, claiming that they had seen him break and enter a freight car on one of the defendant's switch tracks in the west yard. These three men were William, Lester and D. F. Baxley, brothers, special agents and employees of defendant. It developed from defendant's evidence that there had been several prior burglaries of cars in defendant's yards and that the Baxleys, on the night in question, were on the lookout for another possible burglary.

The Baxleys, at the time of taking plaintiff into custody, accused him of having broken and entered the car, which contained merchandise and had been sealed, stating that they had been watching and had seen him do so. Plaintiff then and at all times thereafter stoutly denied having done so.

Plaintiff was taken before a justice of the peace, and charged, upon complaint signed by William Baxley, with the felony of burglary in the second degree. Plaintiff's home was searched, nothing

incriminating being found. He was given a preliminary hearing before the justice, at which the Baxleys testified. Their testimony was to the effect that they had seen plaintiff break and enter the car. If true, it showed probable cause for the arrest and prosecution. They testified similarly at the trial of this case. Plaintiff, at the trial of this case, testified that said testimony of the Baxleys was false,—a dispute resolved in plaintiff's favor by the verdict of the jury. Plaintiff was, by the justice of the peace, on August 24, 1933, bound over to the district court, to answer such information as might be filed by the county attorney. From the time of his arrest, August 14th, until his preliminary examination, and until August 26th, thereafter, he was confined in the county jail, being unable to make bond. He made bond and was released thereunder on August 26th. According to his testimony the jail was filthy and unsanitary and he was subjected to great hardships therein.

The prosecuting attorney (county attorney) failed and refused to file an information in the district court against plaintiff. He filed in said court, pursuant to a Kansas statute, a written statement of his reasons for such action, which will be more specifically referred to hereafter. Upon plaintiff's application the justice of the peace entered an order of record, on February 22, 1934, dismissing the cause and discharging plaintiff and his bondsmen. This order was approved and concurred in by the prosecuting attorney. It stands admitted that the prosecution had terminated in plaintiff's favor before the institution of this suit. Further facts, as may be necessary, will be stated in the course of the opinion.

■ Respondent has filed here a motion to dismiss the appeal because of alleged insufficiency of appellant's abstract of record and on the further ground that appellant's statement of facts in its brief is not the "fair and concise" statement required by our rules. The complaint as to the abstract seems to be that it omits some of the evidence and too greatly condenses other portions. Respondent has filed an additional abstract, not however for the purpose of supplying the alleged deficiencies in appellant's abstract but only to demonstrate that such deficiencies exist. To illustrate, it is pointed out that appellant wholly failed to abstract the testimony (given by depositions) of two witnesses, Forcum, the justice of the peace, and Rosenstahl, the prosecuting attorney. It sufficiently appears that Forcum's testimony went only to the identification of his record or docket entries. These were introduced in evidence without objection and with no question raised as to their authenticity. Rosenstahl's deposition only identified a certain document, Exhibit B 1, which he had filed in the district court, stating his reasons for not filing a criminal charge against plaintiff in that court. The authenticity of that document, also, was treated as a conceded fact at the trial. It

was objected to but not on the ground of lack of proper identification. No point is made on this appeal as to insufficient identification or lack of proof of authenticity of any of said records or documents.

As to condensation, respondent says the bill of exceptions contained 672 typewritten pages. Appellant's abstract contains 202 printed pages. Much of the testimony is condensed and stated in narrative form. Where appellant seemingly deemed it necessary to an understanding of the points urged for reversal the evidence is set out *in haec verba.* If we had here a question of the sufficiency of the evidence to make a case for the jury or to sustain the verdict we might have to hold appellant's abstract insufficient. But there is no such question raised on this appeal. Appellant does not challenge the sufficiency of the evidence. Our Rule 13 requires that an appellant's abstract shall set forth "so much of the record as is necessary to a complete understanding of all the questions presented for decision" and that the evidence of witnesses may be in a narrative form except when questions and answers are necessary to a complete understanding of the testimony. After careful consideration of this question and of the many cases cited, we are of opinion that appellant's abstract sufficiently presents the record facts necessary for determination of the points urged for reversal, except, possibly, the contention that the verdict is excessive,—a question which in our view of the case, we shall not reach.

As to the statement of facts in appellant's brief we are of opinion that said statement is not so long and detailed as to justify the drastic remedy of dismissal of the appeal. The motion to dismiss the appeal is overruled.

*Of the merits:*

A statute of Kansas makes it the duty of the prosecuting attorney to "inquire into all cases of preliminary examinations" where the alleged offender has been committed to jail or placed under recognizance, "and if the prosecuting attorney shall determine . . . that an information ought not to be filed, he shall file with the clerk of the (district) court a statement in writing containing his reasons, in fact and in law, for not filing an information in such case." The prosecuting attorney filed with the clerk of the district court such statement, explanatory of his declination to file an information against plaintiff. It was the plaintiff's Exhibit B 1 above referred to and. omitting caption and signature, reads as follows:

"County Attorney's Reason for Not Filing Information.

"On the 14th day of August, 1933, W. G. Polk was arrested by officers L. R. Baxley, D. F. Baxley and William Baxley in the North Katy yards about Two A. M. One of the officers signed a complaint charging Polk with burglary of an M-K-T box car.

"The officers testified that they were watching a particular car

and that they saw a man walk up to the car, turn his light out and they heard the car door open and saw his light inside the box car. In about a minute they heard the box car door close and saw a man get out of the car. After the man had walked several feet from the car, the officers arrested him and identified him as W. G. Polk.

"W. G. Polk was a switchman and was on duty at the time he was arrested.

"After hearing the statements of the witnesses in this matter, I was of the opinion that W. G. Polk was guilty and that there was sufficient evidence to obtain a conviction. Consequently, a Warrant was issued on the 14th day of August for his arrest.

"Thereafter, this matter was reported to the United States Department of Justice for the reason that the freight car above referred to was ready for inter-state shipment.

"An investigator from the Bureau of Investigation came to Parsons and investigated this matter and filed a report with the United States Department of Justice. The United States Department of Justice then informed the County Attorney's office that the facts in the case were not sufficient for a Government prosecution.

"Due to the fact that nothing was taken from the box car and that W. G. Polk was on duty as a switchman at the time the car was broken into, this case is unlike the ordinary burglary case and it is the opinion of the County Attorney's office that more evidence is required in a case of this kind.

"Since the issuance of the Warrant in this case, the County Attorney's office has gone into this matter very thoroughly and has written statements from all the witnesses on file in the County Attorney's office.

"For the above reasons, the County Attorney's office did not feel that a conviction could be had in this matter and consequently did not file an information in the District Court against W. G. Polk."

Said statement was admitted in evidence over defendant's objection, defendant contending that the only legitimate purpose the statement could have in this case would be to show that the criminal prosecution had terminated in plaintiff's favor, which fact was admitted, and that, among other stated reasons, the statement was hearsay as to defendant, was not a sworn statement, was made without opportunity for cross-examination, contained matter extraneous to the issues on trial and was prejudicial to defendant, etc. Without further detail it may be stated that the objection was sufficient.

We think the admission of said Exhibit B 1 was clearly prejudicial and reversible error. Before said exhibit was offered and again when it was offered defendant admitted of record,—an admission binding upon it,—that the criminal prosecution had finally and definitely terminated in plaintiff's favor and that there was no longer any

1222

criminal charge pending against the plaintiff. The record or docket entry of the justice of the peace, made under date of February 22, 1934, was introduced without objection, showing, with the written approval of the prosecuting attorney, that the prosecution was dismissed and defendant and his bondsmen were discharged. This was after plaintiff had been bound over to the district court. Much is said in briefs of counsel as to whether or not the justice of the peace still had jurisdiction to dismiss the case. We deem it unnecessary to discuss authorities bearing on this question because when Exhibit B 1 was offered defendant admitted, not merely that witnesses would testify but as a binding fact, that the prosecution had been dismissed in the district court and that there was no longer any criminal proceeding pending anywhere against the plaintiff. Such admissions conclusively, as against defendant, established the fact that the prosecution had terminated in plaintiff's favor before the institution of this suit,—a fact concededly necessary to plaintiff's maintenance of this action. If the justice of the peace still had jurisdiction to dismiss the case after having bound the plaintiff over to the district court his record entry of February 22, 1934, effectually accomplished that result, and it may be mentioned here that according to plaintiff's petition he stands upon that order of dismissal as terminating the prosecution. On the other hand if the dismissal, to be effective and to terminate the prosecution, had to be in the district court, defendant admitted that it had been so made. In either contingency defendant's admission that the prosecution had terminated in plaintiff's favor was full and unconditional, and, as to defendant, conclusive of that fact as against it.

Now, that fact having been thus formally and conclusively admitted of record, there was no need to introduce the prosecuting attorney's statement of his reasons for the dismissal or his consent thereto.

When this evidence was offered at the trial and defendant announced that it admitted that the prosecution had terminated, as we have indicated, plaintiff's counsel said "we don't have to take the admissions of the defendant. We can prove it in our own manner." If defendant's admission had gone only to the extent of admitting that certain witnesses would testify to certain facts tending to show dismissal of the prosecution, leaving it for the jury to determine the weight of such testimony, or if there had been any dispute as to the fact which plaintiff had to prove doubtless he would have been entitled to introduce all evidence tending to prove the disputed fact. But here defendant's admission took the fact of the termination of the prosecution out of the realm of dispute. It sufficiently and conclusively established that fact for all purposes of the case.

■ This case simmered down largely, if not almost entirely, to the question of whether or not plaintiff was guilty of the crime which had been charged against him. He testified that he had not broken and entered the car, and that the Baxleys, in testifying at the preliminary hearing that he had done so, had given false and perjured testimony, resulting in his being bound over. The three Baxleys, all unimpeached, testified that they saw him break and enter the car. If that testimony was true,—a question for the jury, —the prosecution was not without probable cause. In this situation the prosecuting attorney's statement, said Exhibit B 1, cannot be held to have been harmless. That statement, while indicating that the prosecuting attorney had at first, on the statement of the Baxleys, thought plaintiff guilty, also reflected his final conclusion, after thorough investigation and securing written statements of "all the witnesses"—(what witnesses?)—he felt that a conviction could not be had. Would not that official statement be regarded by the jury as indicating that said officer, after investigation and seeing statements of other witnesses, had come to at least gravely doubt if not to disbelieve the truthfulness of the Baxleys?

Moreover, said exhibit indicates that the prosecuting attorney had or may have had statements of other persons, "all the witnesses," he says, and that an investigation had been made by the United States Department of Justice and reported to him, indicating that that department deemed the evidence insufficient. It is apparent that the prosecuting attorney's final conclusion was based upon matters, partly at least, de hors the record in this case. That it was reached and acted upon by him in good faith we do not question. That the sincerity of his official action was believed by the jury we may also well believe—which but adds force to the thought that his opinion, his stated reasons for not proceeding with the prosecution, must have tended strongly in the minds of the jury to discredit the Baxleys, thus throwing into the scale, in favor of plaintiff and against defendant, the weight of the prosecuting attorney's statement and conclusions.

In 38 Corpus Juris, page 488, section 172, it is said: "While there is some authority apparently to the contrary, according to the weight of authority, the reasons given by a justice for his judgment in discharging defendant are not admissible for any purpose. . . . Plaintiff is entitled to the legal effect of the judgment and nothing more."

Aldrich v. Island Empire Telephone & Telegraph Co., 113 Pac. 264, 265, was an action for malicious prosecution because of a criminal charge filed in a justice of the peace court. The magistrate had discharged the plaintiff. At the trial of the malicious prosecution suit the plaintiff was permitted to prove what purported to be the

reasons given by the justice of the peace for refusing to hold the plaintiff for trial on the criminal charge. The Washington Supreme Court said, 113 Pac. 1. c. 265:

"This was also error. The evidence was not competent. As was said by the Superior Court of Georgia in Anderson v. Keller, 67 Ga. 58, passing upon a similar question: 'The question upon this trial was malice and the want of probable cause. The judgment of the magistrate discharging the plaintiff was admissible, but any reason given for that judgment should not have been admitted as evidence in this case. The plaintiff was entitled to its legal effect, but nothing more.' To the same effect are the following cases: Dempsey v. State, 27 Tex. App. 269, 11 S. W. 372, 11 Am. St. Rep. 193; Chapman v. Dodd, 10 Minn. 350 (Gil. 277); Martin v. Corscadden, 34 Mont. 308, 86 Pac. 33; Apgar v. Woolston, 43 N. J. Law, 57."

Hickey v. Shellenbarger (Mich.), 147 N. W. 574, was a malicious prosecution suit, analogous in its determining facts to the case now before us. Both litigants claimed and testified to first hand, "personal, positive and direct" knowledge of the essential fact of whether or not the plaintiff was guilty of the charge which the defendant had made against him in the justice of the peace court, where the plaintiff had been discharged. The court said that the plaintiff's testimony made a *prima facie* case and, if true, established want of probable cause and authorized the inference of malice and that if the defendant's testimony was true "there was not only probable cause but positive and conclusive cause for the prosecution. . . . If untrue, there was no cause, probable or possible." We have substantially that situation here. In said Hickey case it appears that the trial court had excluded certain testimony given in the justice of the peace court, offered by the defendant to show that the discharge of the plaintiff by the magistrate was wrongful. The Supreme Court said, 147 N. W. 1. c. 576: "The details and reasons of the (justice) court for such decision (the discharge) were immaterial. The (trial) court rightly held that the discharge of plaintiff was only admissible and material to show the prosecution was terminated, and what evidence the magistrate had before him to govern his official action, or what he may have thought, was immaterial."

In Casey v. Sevatson (Minn.), 16 N. W. 407, malicious prosecution, the justice of the peace in whose court the prosecution had occurred, made this entry: "Upon due consideration of the evidence . . . it is adjudged that the complaint was malicious and without probable cause, and that Erick Sevatson pay the costs of this action, amounting to $27.40." The defendant objected to that part of the docket entry certifying that the complaint "was malicious and without probable cause," which objection was overruled. The Supreme Court held the admission of that portion of the docket entry erro-

neous, saying that while said entry was made in conformity to a statutory provision, said provision was evidently framed for the sole purpose of relieving the public of costs "by saddling them upon the complainant, through whose unjustifiable action they have been incurred," but that the statute could not have been intended to give the magistrate's certificate "the effect of an adjudication in favor of the party complained of and against the complainant, that the complaint was malicious and without probable cause: for—First, the proceeding in which it is made is not between those parties, but, as respects the complainant, purely *res inter alios*; and, second, it is not the result of any proceeding which can be called a 'trial,' as respects the complainant."

In Martin v. Corscadden (Mont.), 86 Pac. 33, a portion of a justice of the peace's docket entry, similar to that in Casey v. Sevatson, supra, was held incompetent, "whether offered as a prior adjudication of the issue on trial, or as an expression of opinion by the justice thereon." Numerous cases are cited in support of the holding.

In line with the foregoing authorities and, we think, sustaining in principle our conclusion on this point, see, also, the following: Sweeney v. Perney (Kan.), 19 Pac. 328, judgment of acquittal competent to establish fact that prosecution had terminated but for no other purpose, and portion thereof finding that complaint was malicious and without probable cause inadmissible; Farwell v. Laird (Kan.), 49 Pac. 518, finding of justice of the peace that prosecution was malicious and without probable cause inadmissible; Dempsey v. State (Tex. App.), 11 S. W. 372, testimony of justice of the peace that he discharged the accused "because, in his opinion, there was not sufficient evidence to sustain the charge" inadmissible and calculated to injure the defendant; Dickson v. Young et al. (Iowa), 200 N. W. 210, opinion of United State District Judge, giving reasons for overruling motion in arrest of judgment and denying new trial incompetent in subsequent malicious prosecution suit; Herzog v. Kincade, 66 Fed. (2d) 210, oral remarks of judge in dismissing case, stating his reasons, not admissible, the only purpose of record of dismissal being to establish termination of prosecution.

In so deciding this point on the merits we have not overlooked the urgently advanced contention of respondent that said point is not sufficiently stated in appellant's brief to present it for our consideration.

In its formal "Assignments of Error" appellant says:

"The court erred in admitting in evidence, over defendant's objections and exceptions, Plaintiff's Exhibit B-1, the same being the statement of the county attorney of his reasons for failing to file an information in the district court."

This assignment appears, numbered II, under the caption of "Points and Authorities" thus:

"The court erred in admitting in evidence the statement of the county attorney setting forth his reasons for dismissing the criminal prosecution."

Following said assignment under "Points and Authorities" is a list of cited authorities. Under the caption "Argument," paragraph numbered II, there is a discussion of this point, setting forth appellant's reasons for claiming error in the court's ruling, reference to pages of the abstract where said Exhibit B 1 and the court's ruling and appellant's objection thereto appear, and discussion of cases relied on.

Respondent asserts that appellant should have stated under "Points and Authorities" its reasons for charging error and specified the ground of objection made to the admission of said exhibit. We observe that respondent's brief follows the same method as appellant's. Under "Points and Authorities" he says only, "Plaintiff's Exhibit B 1 was properly admitted in evidence," followed by a long list of cases. He elaborates on this statement, giving his reasons and discussion of authorities, under the title of "Argument." It would seem that he is hardly in position to complain of appellant's brief. But waiving this circumstance, since appellant was required under our rules to "distinctly allege" in his brief the errors committed by the trial court and in addition "a statement, in numerical order, of the points relied on, with citation of authorities thereunder" (Rule 15), and treating respondent's brief as challenging the sufficiency of appellant's brief on this point, we are of opinion that respondent's contention should be disallowed.

In its "Assignment of Errors" appellant charges error in the admission of Exhibit B 1, describing it. Under "Points and Authorities" he charges error in the admission of "the statement of the county attorney setting forth his reasons for dismissing the criminal prosecution," clearly meaning said Exhibit B 1. There was no other "statement" of the county attorney admitted. Under the caption "Argument," in a similarly numbered paragraph, we find appropriate reference to the pages of the abstract where the matter complained of under "Points and Authorities" appears in the record. We have experienced no difficulty or uncertainty in understanding the point appellant sought to present nor the reasons for its complaint.

In Collier v. Catherine Lead Co., 208 Mo. 246, 106 S. W. 971, there was no separate assignment of errors but under "Points and Authorities" the appellant said: "1. The court erred in admitting in evidence the sheriff's deed in partition to Firmin Desloge, through whom defendants claim title." There were three other "points," eqally general. This court said, 208 Mo. l. c. 259, 106 S. W. 971:

"Following each of the above is a long list of cases cited as the

ones relied upon to sustain the point. Then follows that portion of the brief under the heading 'Argument,' in which the authorities cited under the previous points are discussed and reviewed, and applied to the case at bar. This we think a sufficient compliance with the rule. Many lawyers do, and it is the better practice, to make an 'Assignment of Errors' separate and apart from their 'Points and Authorities' and their 'Argument,' thus making four subdivisions of their brief, i. e., statement, assignment of errors, points and authorities, and argument. The brief attacked in this instance omits the second subdivision, last above given, but has the other three. We think this is sufficient and this point must be ruled against the defendant.''

In Wallace v. Libby, 231 Mo. 341, 344, 132 S. W. 665, this court said:

''Much latitude must, in the very nature of things, be permitted under Rule 15 of this court. Each brief and argument must depend largely upon the individuality of the person who prepares or makes them, and no fixed standard can be erected by which each and all briefs and arguments are to be measured or tested. Just so there is a substantial compliance with Rule 15, no objection can successfully be made to the form of the brief or the order of the argument.''

In the circumstances of the case, as above outlined, we think it would be too harsh and rigid construction of our rules to hold that appellant's said point is not sufficiently presented to be reviewable.

In view of a possible second trial a few other points should be mentioned.

■ In cross-examining the Baxleys, defendant's witnesses, plaintiff's counsel was permitted to read numerous questions and answers supposed to have been propounded to and answered by them at the preliminary examination. Some answers they admitted, others they denied having made and as to some others they said they did not remember. When plaintiff's counsel began this cross-examination defendant objected that the document counsel was reading from had not been identified and was not admitted or shown to be a transcript of proceedings before the justice. Plaintiff's counsel said he would identify it later. It was never identified so as to be admissible and was not introduced in evidence, but it is clear that plaintiff's counsel was reading from it and that the jury so understood and they must have gotten the impression that it was in fact a transcript of testimony given at the preliminary. Plaintiff thus, by indirection, got before the jury the alleged transcript, which he was not entitled to introduce in evidence. Portions of it tended to contradict and impeach the testimony of defendant's witnesses at the trial and was obviously used for that purpose. Such procedure was improper.

■ Criticism is made of plaintiff's Instruction No. 7. This is a

long instruction, designed to hypothesize the facts necessary to be found in order to entitle plaintiff to a verdict. We think it was prejudicially erroneous in this: After requiring a finding that William Baxley was defendant's agent, the filing of the complaint, other matters such as plaintiff's arrest and the prosecution before the justice, the county attorney's refusal to file an information and that he had filed the statement referred to in evidence giving his reasons therefor, etc., it said, "and that thereupon plaintiff was fully released and discharged and that said prosecution thereupon terminated *in the full and complete exoneration* and discharge of plaintiff," etc., hypothesizing further facts. (Italics ours.)

We think the above italicized language of said instruction was erroneous and misleading. The jury may well have understood therefrom that they were authorized to find from the fact alone of the prosecuting attorney's failure to file information and plaintiff's discharge that plaintiff was thus conclusively adjudged innocent of the criminal charge on which he had been prosecuted. "Full and complete exoneration" would mean that his innocence was established. The question of plaintiff's guilt or innocence was a vital one in the circumstances of this case. If he broke and entered the car as the Baxleys testified there was probable cause for the prosecution. If he did not, then, under the evidence, there was no such cause. In a malicious prosecution suit the plaintiff must affirmatively show want of probable cause. The dismissal of the prosecution herein did not conclusively establish such fact as against defendant. [See on this point: DeWitt v. Syfon, 202 Mo. App. 469, 211 S. W. 716; Higgins v. Knickmeyer-Fleer Realty & Inv. Co., 335 Mo. 1010, 1025-6, 74 S. W. (2d) 805, 812 (1-4), 813 (5-7); Madden v. Covington (Mo. App.), 86 S. W. (2d) 190.]

Plaintiff's Instruction 5 is criticized on the ground that it, in effect, put upon defendant the burden of proving the existence of probable cause, whereas (Higgins case, supra), the burden of proof rests upon the plaintiff to show *want* of probable cause. Said instruction begins, "The court instructs the jury that *before you can find* defendant was justified or excused in making a complaint against plaintiff and . . . continuing the prosecution of him you must find that it had probable cause to believe that the charge . . . was true." (Italics ours.) It then proceeds to define probable cause.

The main criticism of said instruction is as to the language we have italicized. Said instruction is not, strictly speaking, a burden of proof instruction. We are not prepared to say, in view of the instructions as a whole, that it is misleading, but in the event of another trial we suggest that, if given, it be clarified.

Other alleged errors are complained of which may not arise on another trial. We shall not further lengthen this opinion by dis-

cussing them. The judgment is reversed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.