**John Robert SHAW, as Executor of the Estate of Anthony Alma Rahner, deceased, Appellant,**

v.

**ATLANTIC COAST LINE RAILROAD COMPANY and Southern Railway Company, Appellees.**

**No. 7226.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 8, 1956.

Decided Nov. 7, 1956.

Thomas E. McCutchen, Columbia, S. C. (Whaley & McCutchen, Columbia, S. C., on brief), for appellant.

Frank G. Tompkins, Jr., Columbia, S. C., for appellee Southern Ry. Co.

Julius W. McKay and Douglas McKay, Columbia, S. C., for appellee Atlantic Coast Line R. Co.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOPER, Circuit Judge.

This suit against the Atlantic Coast Line Railroad Company and the Southern Railway Company was brought by the Executor of the estate of a conductor employed by the Southern, who was killed by a train of the A.C.L. in attempting to cross its tracks at 4:30 A.M. on December 21, 1952, at Hardeeville, South Carolina. This suit against A.C.L. claimed damages for wrongful death and was brought under the Lord Campbell's

Act of South Carolina, §§ 10–1951 and 10–1952 of the South Carolina Code of 1952. The suit against Southern on the same cause of action was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, since the deceased was engaged in the performance of his duties as its employee when he was killed. At the conclusion of the plaintiff's evidence at the trial in the District Court both defendants moved for directed verdicts in their behalf but the District Judge overruled the motions in order to afford the plaintiff the opportunity to cross-examine the defendants' witnesses. Similar motions were made at the end of the defendants' evidence and were then granted, the Judge being of the opinion that the sole cause of the accident was the action of the deceased in trying to cross the railroad tracks when he knew that a rapidly moving train was approaching.

The scene of the accident was a small wayside station of A.C.L. at Hardeeville, which was maintained by A.C.L. but was used by both railroads since the Southern makes use of the tracks of A.C.L. from this point south to Jacksonville, Florida. The station building had a frontage of 90 feet and a depth of 25 feet. Two tracks of A.C.L. ran north and south close to its west side. The easternmost rail of the northbound track was located 16½ feet from the station and the west rail of the southbound track 35 feet therefrom. A single track of the Southern was located 31 feet west of the westernmost rail of A.C.L., and the distance from Southern's track to the northbound track of A.C.L., on which the man was killed, was 44 feet 4 inches. The intervening space between the tracks of the two railroads was a park-like area with some growing trees and shrubbery. This area was maintained by A.C.L. but the Southern had the right to put the property and its appurtenances in good condition if A.C.L. failed to perform this duty but had never requested A.C.L. to remove the trees and shrubbery between the tracks. The station was in the charge of a lever telegraph operator of A.C.L. who regulated the movement of the trains at this point for both railroads.

The accident occurred when an A.C.L. express train going north on the track nearest the station at something more than 70 miles per hour passed a motionless Southern train which was headed south and had come to a stop at the station on its own track a few moments before. The station master had had 2 minutes previous notice of the arrival of the Southern train and about 8 minutes notice of the arrival of the A.C.L. train, which was not scheduled to stop at the station, and had given it the green light to go through without reducing speed. In the meantime the station master, in accordance with a rule of his railroad, which required the movement of the train to be protected under such conditions, had supervised the crossing of the A.C.L. tracks by three persons who had come to meet a deaf and dumb child, the only person to arrive on the Southern train. These persons had crossed and were standing alongside the Southern train when the A.C.L. train came through.

The Southern train was in charge of Anthony A. Rahner, the conductor who was killed. He was 69 years of age and had been employed by the Southern for more than 40 years. Upon the arrival of his train he and his flagman alighted on the ground. Rahner instructed the flagman to warn the porter of the train not to let the defective child be run over. At that moment the A.C.L. express was not more than 30 seconds away; and the flagman, standing on the ground, heard its warning signal and the great noise of its three diesel engines and 15 cars, and saw the reflection of its double headlights as it rushed towards the station.

It was the duty of the deceased conductor to cross from his train over the main line of the A.C.L. to the station to deliver mail and receive a clearance order permitting his train to proceed. After speaking to the flagman he walked a short distance ahead to the baggage car of his train, took some mail from the man in charge and started towards the station, and while he was still in the

park-like area he broke into a run in an evident attempt to cross the tracks of the A.C.L. train but was hit and killed before he could cross the northbound track on which the express was running. The flagman saw him run across the park-like area but because of the shrubbery lost sight of him before he reached the A.C.L. tracks and was struck. This account of the accident was given by the flagman, a witness for the plaintiff. It was supported by the testimony of the baggage man on the Southern train, a witness for the defendant, who was standing in the door of the baggage car and handed the mail to his conductor and then watched him run across the intervening space of the A.C.L. tracks until he was hit by the train. This witness testified that he also was aware that the express train was approaching. The engineer on the A.C.L. express was on the right side of the leading diesel and did not see the conductor, but the brakeman on the left side caught sight of the man an instant before he was struck.

Upon this state of the record the appellant contends that the Southern was guilty of negligence because it failed to furnish Rahner a safe place to work, in that it permitted the trees and shrubbery to remain in the intervening space knowing that Rahner was obliged to cross the A.C.L. tracks in the performance of his duties without special notice of the approach of trains. It is pointed out that the Southern train was behind its schedule and that it was the duty of the conductor to go to the station as quickly as possible for his clearance in order to expedite the movement, and it is said that it is reasonable to infer that in this instance his view was obscured by the shrubbery so that he was unaware of the danger until it was too late.

The undisputed evidence in the case is to the contrary. Rahner was a trainman of many years experience, familiar with the conditions existing at the station. He had been on the same run for more than three years and had taken his train through on many previous occasions. He knew that high speed A.C.L. trains passed through the station and that southbound Southern trains stopped at the station to permit A.C.L. trains to pass. He showed his awareness of the oncoming train that morning by warning his flagman to look out for the child. Even more significant is the evidence that, in common with other railroad men present, he actually knew that the train was rushing toward the station from the thunderous noise of the engines and cars and the flashing of the headlights. Furthermore, the growth between the tracks could not have contributed to the catastrophe, as is shown by the uncontradicted evidence of witnesses on both sides. The photographs submitted by the plaintiff show that the trees and shrubbery did not grow immediately alongside the A.C.L. tracks and there was ample space, not less than 25 feet, between the trees and the tracks within which a train approaching the station from the south could be seen for more than a mile.

The appellant also rests its case upon the statutory rule, 45 U.S.C.A. § 53, that, under the Federal Employers' Liability Act, contributory negligence of a plaintiff employee does not bar recovery for injuries but merely goes to the diminution of the damages. It is said that even if the deceased was negligent in running upon the A.C.L. tracks as described, there was negligence on the part of both railroads in allowing the train to pass through that station at high speed while a Southern train was standing at the station to receive and discharge passengers, although the station operator had previous knowledge that both trains were about to arrive.

That there was an element of danger in such a situation is obvious but it does not follow that the operation was negligent. It is common knowledge that through trains customarily pass small wayside stations without stopping or slowing down; and the custom was recognized in a rule of the A.C.L. which provided that trains and engines must run at reduced speed in passing a train receiving or discharging passengers at a station, and that trains must not pass

between such a train and the platform at which passengers are being received or discharged, except where proper safeguards are provided or the movement is properly protected. The evidence shows that under this rule it became the duty of the station operator to watch over and supervise the movement of passengers across the A.C.L. tracks upon the approach of a through train and that the operator performed this duty on this occasion. No evidence was offered to show that this practice was considered by experienced railroad men, or by anyone, to be negligent or improper. No one at the station that morning was actually exposed to danger except the most experienced railroad man present, and he only because of his own conduct. As the District Judge held, the passing of the train created a condition of which the deceased was well aware but refused to recognize, and hence it must be held that his death was not due to the great speed of the train but to his own voluntary act. See Hartley v. Atlantic Coast Line R. Co., 5 Cir., 194 F.2d 590; Chesapeake & Ohio R. Co. v. Burton, 4 Cir., 217 F.2d 471; Moore v. Southern Ry. Co., 163 S.C. 342, 161 S.E. 525, reversed 284 U.S. 581, 52 S.Ct. 38, 76 L.Ed. 503; Wolfe v. Henwood, 8 Cir., 162 F.2d 998; Murray v. Atlantic Coast Line R. Co., 4 Cir., 233 F.2d 214; Atlantic Coast Line R. Co. v. Glenn, 4 Cir., 198 F.2d 232; New York C. & St. L. R. Co. v. Boulden, 7 Cir., 63 F.2d 917; Drawdy v. Atlantic Coast Line R. Co., 75 S.C. 308, 55 S.E. 444.

█ The same considerations apply in the case against A.C.L. and, in addition, it has the defense of contributory negligence on the part of the deceased, which is conclusively established. It is contended that negligence on the part of the A.C.L. was shown because the evidence as to whether the bell of the engine was rung as the train neared the station is somewhat uncertain; but this is immaterial, for it is certain that the ringing of the bell would have added nothing to the warning which the deceased was given by the noise and lights of the approaching train.

Affirmed.