Cloyd WEHRLI, Respondent,

v.

WABASH RAILROAD COMPANY, a Corporation, Appellant.

No. 46162.

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 8, 1958.

Ely & Voorhees, Wayne Ely, St. Louis, for (defendant) appellant.  John L. David-

son, Jr., Chares P. Lippert, St. Louis, of counsel.

Mark D. Eagleton, Eugene K. Buckley, Albert J. Stephan, Jr., St. Louis, for respondent.

STORCKMAN, Presiding Judge.

The defendant has appealed from a judgment for $40,000 in an action under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, to recover damages for personal injuries suffered by the plaintiff at a railroad crossing in Adrian, Michigan, as the result of a collision between the railroad motor car upon which he was riding and an automobile traveling on the highway. The relief sought on appeal is a judgment for the defendant in accordance with its motion for a directed verdict or, in the alternative, for a new trial.

Plaintiff's petition alleged that the defendant negligently provided the plaintiff with an unsafe and dangerous method and place of work in that the defendant insulated its motor car so as to prevent it from activating the protective electric signal devices to warn motorists at the public crossing of the presence and danger of the approaching railroad motor car, and failed and omitted to furnish plaintiff appliances or devices which would warn motorists at the public crossing of the presence and danger of approaching railroad motor cars. The defendant denied that it was negligent in any respect, and alleged that the collision and plaintiff's injuries were caused by and resulted solely from acts of negligence of the plaintiff and the driver of the automobile separately or in combination.

■ The defendant first charges that the evidence is insufficient to establish that the defendant was negligent or that plaintiff's injuries resulted from defendant's negligence. The evidence bearing on these issues will be stated most favorably to the plaintiff, the prevailing party.

■ The plaintiff, a resident of Monroe County, Missouri, was employed by the defendant railroad company as a signal maintenance man. On February 9, 1955, in the course and scope of his employment, plaintiff was operating a railroad motor car on the defendant's railroad tracks at a public crossing in Adrian, Michigan. At the place in question the railroad tracks run generally north and south, and intersect East Beecher Street, a public street running generally east and west. At the crossing the defendant operated and maintained protective electric signal devices which were activated by railroad trains on the tracks, so as to warn motorists of the presence and danger of the trains approaching and passing over the public crossing and to prevent collisions between railroad equipment and private automobiles. The railroad motor car operated by the plaintiff was insulated so as to prevent it from activating the electric signal devices at public crossings. At the East Beecher Street crossing a collision occurred between an automobile being driven on the highway and the railroad motor car being operated by plaintiff on defendant's tracks. This much is established by the allegations and admissions of the pleadings.

East Beecher Street, at the place in question, is a concrete-surfaced highway and practically level. It is traversed by two sets of defendant's railroad tracks. The crossing is protected by electrically operated flasher lights and a bell designed to warn highway travelers of the approach of railroad trains. The warning signals with which we are concerned are on a standard erected on the southwest corner of the intersection. In addition to a pair of flasher lights and a warning bell, there is a sign reading: "Railroad Crossing" and below that, "Stop on Red Signal." When a train approaches, the red lights flash and a bell rings, and they continue to so operate until the rear of the train has passed over the crossing.

The accident ocurred at about 11:00 a. m. The weather was clear and the pavement dry. Feneley Pope, age 15, was driving the automobile which collided with the railroad motor car on which the plaintiff was riding.

Feneley was considering the purchase of a used car and had been invited by a dealer to drive this one to try it out. The dealer was located about two blocks west of the railroad crossing. Feneley, accompanied by his father, a deaf mute, drove eastwardly on East Beecher toward the crossing. He was driving close to the middle but on the right-hand side of the roadway at about 30 to 35 miles per hour. He was familiar with the crossing and had gone over it many times. He looked at the crossing signals on this occasion and saw that the lights were not flashing. As he approached the crossing he continued to watch the signals to see whether they were going to flash and paid no attention to anything except the signals. He did not look either to the right or left, but kept his eyes "fixed on that signal." He reduced his speed about five miles an hour as he was about to pass over the crossing because he thought the lights might come on. He drove in a straight line and did not swerve either to the right or left and did not apply his brakes at any time before the collision. He did not see the motor car prior to the time he struck it, although he thought it came from his left.

At the time of the accident plaintiff was en route to repair some gates and flasher signals at Madison, three or four miles south of Adrian. He was traveling alone on a railroad motor car sometimes referred to as a one-man inspection car. He had started from a point about a block and a half or two blocks north of the Beecher Street crossing. He was traveling on the west or southbound set of tracks. As he approached the crossing he was moving at a speed of about 10 miles per hour, but slowed down and brought his motor car to a stop about 10 feet north of East Beecher Street. At this point he had an unlimited and unrestricted view. He looked to his left and to his right; he could see a block or two in both directions. He did not see any automobile traffic moving in any direction. The plaintiff had no recollection of anything that happened from the time he stopped at the crossing until February 21, the day preceding his release from the Adrian hospital. He did not know what hit him or where he landed.

The plaintiff had been sent to Adrian to relieve another workman. He had worked there before and was familiar with the territory. He knew that this motor car, as were all others which he had operated, was insulated so that it would not operate the crossing signals. He had never seen one that was not insulated. The purpose of insulating the motor cars was to prevent their operating the signals and thus interfering with the movement of trains. There was also evidence that motor cars, by reason of their short wheel base, could not be depended upon to operate a circuit and would be untrustworthy if not insulated. The circuit that operates the crossing signals also operates automatic block signals and interlocking signals.

John Bland, a consulting engineer who had visited the scene of the accident and inspected the electric protective signals at the crossing, testified on behalf of the plaintiff that a simple and practical method of activating the signal so as to afford protection to a motor car operator from automobile traffic would be the use of a manual switch along the track. The best method would be a key switch so the public could not get into it. This method would employ the same signals now operated by trains. The motor car operator approaching the crossing could turn on the device and activate the flasher signals and the bell. After he had crossed over, he could turn off the signals by means of another key switch. Witnesses for the defendant, experts in signal operation and maintenance, conceded on cross-examination that crossing signals such as those in question could be wired and equipped with switches so they could be operated manually by a key.

█ The decisions of the Supreme Court of the United States are binding upon the state courts in the determination of issues arising under the Federal Employers' Liability Act, including the issue of whether

the evidence was sufficient to make a submissible case. Headrick v. Kansas City Southern Railway Co., Mo., 305 S.W.2d 478, 482 [1].

In the recent FELA case, Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, the plaintiff, a section laborer, stopped his weed burning operations to inspect journals of a passing train for hot boxes in accordance with instructions. He was injured when he slipped and fell while retreating from the flames fanned by the passing train. The court held a jury case was made, stating, 77 S.Ct. 447 [3]: "These were probative facts from which the jury could find that respondent was or should have been aware of conditions which created a likelihood that petitioner, in performing the duties required of him, would suffer just such an injury as he did."

And further the court stated, 77 S.Ct. 448–449 [6–8]: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence. (Emphasis added.)"

The decision in the Rogers case was relied upon in Webb v. Illinois Central Railroad Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed. 2d 503, and Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct 457, 1 L.Ed.2d 511, all decided at the same time, and has been frequently cited by the Supreme Court since then.

In Shaw v. Atlantic Coast Line Railroad Co. and Southern Railway Co., 353 U.S. 920, 77 S.Ct. 680, 1 L.Ed.2d 718, the Supreme Court on the authority of the Rogers case granted the employee's petition for writ of certiorari and in the same order reversed a judgment in favor of the employer, Southern Railway Co., and remanded the cause for trial. The opinion of the United States Court of Appeals, 4 Cir., 238 F.2d 525, had held the employer, Southern Railway Co., was not negligent where the employee, an experienced conductor, was struck by the train of another railroad company as he attempted to hurry across the tracks to reach the station, was aware of the presence of the fast approaching train and could not have been prevented from seeing the oncoming train by a growth of trees between the tracks.

In Panhandle & Santa Fe Railway Co. v. Arnold, Tex., 283 S.W.2d 303, the employee, a car inspector, was injured when a motor truck belonging to a third person backed into him while he was on a graveled passageway adjoining the railroad cars he was inspecting. The jury found the railway company did not furnish its employee with a reasonably safe place to work, which was the proximate cause of his injury, but made other specific findings that the company was not negligent in permitting the motor truck in the area or in failing to warn the employee and that the company did not fail to keep a proper lookout for its employee. The Court of Civil Appeals of Texas held that, in view of the specific findings that the company was not negligent, the defendant was not liable and reversed the judgment in the employee's favor. In a per curiam opinion the Supreme Court of the United

States reversed the judgment of the Court of Civil Appeals, holding the proofs justified a conclusion that employer negligence played a part in producing the employee's injury. Arnold v. Panhandle & Santa Fe Railway Co., 353 U.S. 360, 77 S.Ct 840, 1 L.Ed.2d 889.

In Cahill v. New York, New Haven & Hartford Railroad Co., 224 F.2d 637, the employee, a brakeman, was assigned to flag motor vehicle traffic which was stopped behind a train standing on a highway crossing. As he looked around at another vehicle, a truck which had been motionless about five feet behind the train started suddenly and without warning, striking the brakeman and pinning him against the standing train. The United States Court of Appeals reversed a judgment for the employee holding no negligence had been shown on the part of the railroad company and that the sole cause of the injury was the negligence of the truck driver. The Supreme Court of the United States granted certiorari and, in the same order, without opinion, reversed the judgment of the United States Court of Appeals for the Second Circuit. Cahill v. New York, New Haven & Hartford Railroad Co., 350 U.S. 898, 76 S.Ct. 180, 100 L.Ed. 790.

In Atlantic Coast Line Railroad Co. v. Smalls, 4 Cir., 216 F.2d 842, employees of the defendant railroad, while waiting for a train at a crossing, were struck by a third party's automobile. The train for which they were waiting was to take them to a company safety meeting to which the company had invited them but attendance was not compulsory. The United States Court of Appeals for the Fourth Circuit held that the defendant was not negligent in failing to provide lights at the railroad crossing 200 yards from the station. The Supreme Court of the United States granted certiorari and in the same order reversed the judgment of the court of appeals without formal opinion. See Smalls v. Atlantic Coast Line Railroad Co., 348 U.S. 946, 75 S.Ct. 439, 99 L.Ed. 740.

In Ferguson v. St. Louis-San Francisco Ry. Co., Mo., 307 S.W.2d 385, this court held that the evidence failed to show any negligence of defendant contributing to cause the plaintiff's injuries and affirmed the trial court's judgment. The plaintiff, a lamp tender of 11 years' experience, had been cleaning and refueling a switchstand lamp on a concrete sidewalk which intersected the defendant's railroad tracks. In order to make a "running inspection" of a train approaching at a speed of 10 to 12 miles per hour, the plaintiff began moving farther away from the tracks by stepping backward. He fell from the sidewalk into a water drain about four feet deep at the edge of the sidewalk. The Supreme Court of the United States granted certiorari and, at the same time, reversed the judgment of this court with the statement that "the proofs were sufficient to submit to the jury the question whether employer negligence played a part in producing the petitioner's injury." Ferguson v. St. Louis-San Francisco Ry. Co., 356 U.S. 41, 78 S.Ct. 671, 2 L.Ed.2d 571.

Also in the case of Honeycutt v. Wabash Railway Co., Mo.App., 303 S.W.2d 153, the United States Supreme Court granted certiorari and summarily reversed the judgment of the St. Louis Court of Appeals. 355 U.S. 424, 78 S.Ct. 393, 2 L.Ed.2d 380.

The Act abolished the fellow servant rule, assumption of risk and contributory negligence as a complete defense, but retained employer negligence as the basis of recovery for an employee's injuries. 45 U.S. C.A. §§ 51–59. While the Supreme Court of the United States acknowledges a case under the Act to be grounded in negligence, these recent cases furnish scant guidance with respect to what the court deems to be the component parts of actionable negligence; that is, the legal principles by which negligence is adjudged. However, the cases do demonstrate what appears to be an expansive judicial concept of the duty and degree of care owed by the employer. It is quite evident that the instances are ex-

ceedingly rare in which it may be ruled as a matter of law that a jury case has not been made. In Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 450–451, 1 L.Ed.2d 493, the court stated: "The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury."

In view of these recent decisions we cannot say, as a matter of law, that the defendant did not owe the duty of furnishing the plaintiff with some means of activating the crossing signals. In fact, the evidence appears to be more substantial proof of "employer negligence" than some of the cases discussed above. The maintenance of the flasher signals at the crossing, accompanied by the sign admonishing highway travelers to "Stop on Red Signal," failed to advise highway travelers that railroad motor cars did not activate the warning signals. The evidence tended to prove that it was feasible and practicable to provide key switches by which the plaintiff could have activated the signals and receive the benefits of that system of warning.

■ The defendant asserts that plaintiff's witness Bland was not qualified to express an opinion that it would be practical to have such a switch at a railroad crossing, but we have held in Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S.W.2d 418, 424 [3], that such matters are not exclusively within the knowledge of an engineer experienced in railroad construction. In view of the qualifications shown, we cannot say that the testimony did not have probative value.

■ It may be conceded, as the defendant contends, that both the plaintiff and the automobile driver were clearly negligent, each in failing to look or, having looked, in failing to see what was plainly visible.

State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915, 918. However, this does not relieve the defendant if it was even slightly negligent, according to the Rogers and other cases cited. The Act provides that the employee's negligence does not bar recovery, but that damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. 45 U.S.C.A. § 53.

The defendant further contends that the collision between the automobile and the motor car being operated by the plaintiff resulted solely from his violation of defendant's Rule 299 of defendant's Rules and Regulations for the Maintenance of Ways and Structures. The rule reads as follows:

"Operation over Highway and Railroad Crossings. At highway and railroad crossings, track cars shall be operated under complete control and at such reduced speed as will prevent an accident. Cars must come to a full stop at such crossings where the vision is in any way restricted and one member of the crew sent ahead to give proceed signal when crossing can be used. Where only one man is with track car he will stop and push car over crossing.

"Cars must not be operated over any crossing protected by gates or watchman until gates are down or watchman is in proper position for flagging street traffic, and it is known that street traffic has been stopped."

■ Defendant asserts that the rule required the plaintiff to push the motor car over the crossing, and that it was shown by defendant's evidence that plaintiff did not do so. Even if defendant's construction of the rule is correct and there was evidence to support the defense, we cannot, on the record before us, say as a matter of law that such violation was the sole and only cause of the casualty. See Hampton v. Wabash R. Co., 356 Mo. 999, 204 S.W.2d 708, 712.

■ The defendant further contends that the fact that the plaintiff was furnished with an insulated car and was not provided with the means of activating the crossing signals was not the proximate cause of the collision between the motor car and the automobile, and hence is not the proximate cause of the plaintiff's injuries. The Act provides for liability if the employee's injuries are caused "in whole or in part" from the employer's negligence. 45 U.S. C.A. § 51. As indicated in the Rogers case, the Act has liberalized the common law requirements of proximate causation.

Defendant's contention that the trial court erred in overruling its motion for a directed verdict is denied.

■ The defendant next contends that the court erred in permitting plaintiff's counsel to read portions of the pleadings to the jury. Near the close of plaintiff's case the plaintiff was permitted, over defendant's objection, to read to the jury paragraph 6 of his petition, the allegations of which were admitted by defendant's amended answer. Paragraph 6 in substance alleged the directions in which the railroad and the intersecting highway ran; that the intersection constituted a public crossing; that the defendant established, operated and maintained protective electric signal devices at such crossing, which were activated by the presence of trains on said tracks so as to warn motorists of the presence and approach of railroad trains approaching or passing over the crossing, and to prevent collisions between the railroad equipment and private automobiles. Plaintiff's offer to read a portion of the second paragraph of the amended answer resulted in defendant's counsel admitting that at the time and place in question there was a collision between the railroad motor car and an automobile.

The defendant contends that unless a party has abandoned his original pleading or filed a pleading which contains an admission against interest, the pleadings are not competent evidence in the case and that the reading of those portions of the pleadings created confusion and left a false impression with the jury, citing Johnson v. City of St. Louis, Mo.App., 138 S.W.2d 666, 669 [1–2], and Waller v. Oliver, Mo., 296 S.W.2d 44, 48 [2–4]. There was considerable interchange between the respective counsel in connection with the reading of paragraph 6 of the petition and the admission made by defendant's counsel. However, we are convinced from the record that the jury was not misled by what was said or left unsaid.

■ We need not determine whether it was necessary to offer in evidence these pleadings upon which the case was being tried as a prerequisite to their being read to the jury. The essential question is whether prejudicial error was committed in permitting paragraph 6 to be read to the jury. We do not think so, because an allegation of fact in an answer upon which the case is being tried is binding on the pleader and for the purpose of the trial such party is precluded from maintaining a contrary or inconsistent position. E. C. Robinson Lumber Co. v. Ladman, Mo.App., 255 S.W.2d 72, 78 [7–9]. The rule is stated in 4 Wigmore on Evidence, 3d. Ed., § 1064, pp. 45–46, as follows:

"The pleadings in a cause are, for the purposes of use in that suit, not mere ordinary admissions (*ante* § 1057), but judicial admissions (*post*, § 2588); i. e. they are not a means of evidence, but a waiver of all controversy (so far as the opponent may desire to take advantage of them) and therefore a limitation of the issues. Neither party may dispute beyond these limits. Thus, any reference that may be made to them, where the one party desires to avail himself of the other's pleading, is not a process of using evidence, but an invocation of the right to confine the issues and to insist on treating as established the facts admitted in the pleadings.

"This much being generally conceded, it follows that a *party may* at any and all times *invoke the language of his opponent's pleading on that particular issue* as rendering certain facts *indisputable*; * * *."

■ Nor was error committed with respect to the admission concerning the collision or the manner in which it was obtained, since admissions made during the progress of trial by a party's attorney for the purpose of being used as a substitute for evidence produced in the usual way are judicial admissions and, as such, are conclusive upon the party making them. Polk v. Missouri-Kansas-Texas R. Co., 341 Mo. 1213, 111 S.W.2d 138, 142 [4], 114 A.L.R. 873; Probst v. St. Louis Basket & Box Co., 200 Mo.App. 568, 207 S.W. 891, affirmed State ex rel. St. Louis 'Basket & Box Co. v. Reynolds, 284 Mo. 372, 224 S.W. 401 [1]; Vogrin v. Forum Cafeterias of America, Mo., 308 S.W.2d 617, 621 [3].

■ The defendant next contends that the court erred in permitting plaintiff's counsel to read to the jury a minute entry showing that the defendant's amended answer was filed on November 13, 1956, the day upon which the trial began. This episode was also accompanied by an interchange between counsel, during which the plaintiff's counsel asked defendant's counsel when the defendant first alleged that the plaintiff had violated Rule 299, and defendant's counsel answered that the minutes of the court would show and that the amendment was made with the consent of plaintiff's counsel and by leave of court. The amended answer was not read, but the plaintiff, over defendant's objection, was permitted to read the minute entry showing that the amended answer was filed by leave on November 13, 1956.

We think the statements of counsel sufficiently show that what was sought to be proved was the date upon which the violation of Rule 299 was first pleaded by the defendant. A party is entitled to show that a defense was raised belatedly as bearing on its being an afterthought. Walser v. Wear, 141 Mo. 443, 42 S.W. 928, 933; Robinson Steel Construction Co. v. White, Mo.App., 305 S.W.2d 58, 61 [4]. In these circumstances, the minute or docket entry in the case showing the date of the filing of the amended answer was admissible. Davis v. Dawson, 273 Mo. 499, 201 S.W. 524, 528; LaCrosse v. Powell, Mo.App., 247 S.W. 1022, 1024. We find the contention to be without merit.

The defendant charges that plaintiff's Instruction No. One was erroneous in permitting the jury to find that, because the motor car was insulated against operating the crossing signals, it was defendant's duty to "furnish plaintiff with appliances or devices which would warn motorists of the presence of the approaching railroad motor car" and in permitting the jury to find that defendant was negligent in not furnishing the plaintiff with such appliances or devices. Since we have held that the evidence was sufficient to submit to the jury the issue of whether the defendant owed a duty of furnishing the plaintiff with some means for activating the crossing signals in order to warn travelers on the highway, the giving of Instruction No. One was not error.

■ The defendant also alleges error in the refusal of the trial court to give its Instruction No. B. This instruction was based on violation of Rule 299 heretofore set out. The offered instruction, insofar as here material, told the jury that if it found the plaintiff did not operate the motor car "under complete control, and did not operate it at such reduced speed as would prevent an accident; or if you find that he did not stop and push the car over the crossing, and that in so failing, if you find he did so fail, plaintiff violated such rule; then if you find and believe from the evidence that the violation, if any, of such rule by plaintiff was the sole cause of his injuries; or if you find that the collision resulted solely from

such violation, if any, of said rule by plaintiff, and from the negligence of Feneley Pope, as set out in another instruction herewith given you; and that defendant was not negligent in any of the respects mentioned in instruction No. One herewith given you, then, and in such event, your verdict must be against the plaintiff and in favor of the defendant."

The defendant contends that the instruction properly submits a defense to which it was entitled, that is, the violation of the rule. On the other hand, the plaintiff contends the instruction was erroneous because there was no substantial evidence that the rule required the plaintiff to push the motor car over a crossing where the view was not obstructed, and also because the instruction did not require a finding that a violation of the rule constituted negligence.

■ Generally, the violation of a company rule does not constitute negligence or contributory negligence as a matter of law. Mech v. Terminal Railroad Ass'n, 322 Mo. 937, 18 S.W.2d 510, 515; Teets v. Chicago, South Shore and South Bend Railroad, 7 Cir., 238 F.2d 223, 226. The rule is stated in 57 C.J.S. Master and Servant § 537(7), pp. 229–230, as follows: "The question as to whether the servant was guilty of negligence in violating a rule, or disobeying an order, of the master, is one of fact for the determination of the jury, unless the evidence is such that there is no reasonable ground for a difference of opinion as to such fact." The effect of the instruction as offered was to declare that the violation charged was negligence as a matter of law.

The meaning of the rule in the circumstances of this case was in controversy. The plaintiff testified that he was familiar with the rule, had been examined on it at stated intervals, and his understanding was that the operator of a motor car was required to push the car over a crossing only when the view was obstructed. In this he was substantially corroborated by defend-

ant's witness, L. B. Yarbrough, assistant superintendent of signals and communication for the defendant railroad company.

The instruction should have left to the jury the determination of whether the plaintiff was guilty of negligence in violating the rule, if he did so. Its failure to do so was sufficient reason for refusing the instruction. We need not decide whether the rule required the plaintiff to push the motor car over the crossing where the view was not obstructed.

■ Defendant next contends that the verdict and judgment are excessive. The plaintiff, 46 years old, was in good health before the accident and worked regularly. The force of the collision threw the motor car, weighing about 840 pounds, a distance of about 20 feet according to one witness, and about 75 feet according to another. The plaintiff was thrown about 10 feet farther than the motor car. He was taken to a hospital in Adrian where he remained until the night of February 22, almost 14 days. He did not regain consciousness until the day before he left the hospital. He received out-patient care at the Wabash Employees' Hospital in Moberly for a period of six months to a year after he was taken to his home in Missouri.

The defendant offered no expert medical testimony on the issue of plaintiff's injuries. Plaintiff's evidence tended to prove that his first and second ribs on the left side and the tenth and eleventh on the right were fractured. The fractures on the left side healed with moderate separation. He still suffered pain in the region of the fractures when coughing or upon unusual motion. He suffered fractures of the fifth metacarpal bones both in his right and left hands. The fracture in the left hand healed with a forward angle of the bone beyond the fracture. He has loss of strength in both hands and a numbness in his ring finger and little finger on his right hand due to nerve injury. He sustained a traumatic myositis to the muscles of his left shoulder, to the posterior por-

tion of the neck, and a partial stiffening of the left shoulder joint, all of which are permanent.

Plaintiff received head injuries which left a linear scar running across the mid-forehead and a scar on top of the head with irregular branches and also on the right side of his face extending over the right cheek. Plaintiff testified his head injuries resulted in constant severe headaches and an impairment of his powers of concentration and recollection. Medicines provided only temporary relief; rest and relaxation were required to ease the pain. Dr. Robert J. Mueller, a neurologist and psychiatrist, testified that plaintiff was suffering a post-traumatic cerebral concussional state due to brain damage resulting from the accident. The witness further testified these symptoms would continue in the future and there was no specific therapy that could be used to improve this condition.

Plaintiff also has a low back pain extending into his right hip and down his right leg to the knee. There is a spasm of the muscles adjacent to the vertebral column in the low back and a partial ankylosis or stiffening of the right hip which produces pain on movement of the hip. X-rays revealed a narrowed space between the fifth lumbar vertebra and the first sacral vertebra. This back injury was diagnosed by Dr. Harold E. Walters as a ruptured intervertebral disc, resulting in the impingement of a nerve. Dr. Walters prescribed a brace which plaintiff wears to prevent painful motion of the back, although it is of little benefit so far as treatment is concerned. Surgery would not be effective because of the lapse of time. Plaintiff's back injury is permanent and will prevent his performing manual labor, including railroad work.

Since his injury the plaintiff has not done any work or earned any wages. He lives on his farm but has been unable to do any field work. His physical activities have been limited to helping his wife around the house and driving a tractor occasionally. At the time of his injury he was earning approximately $4,000 per year. In 1956 the pay for his former job was raised to $4300 per year. At the time of the trial his wage loss was approximately $7,000.

Defendant has pointed out evidence tending to contradict and discredit plaintiff's evidence with respect to his loss of memory, the conclusions of his medical experts, and other aspects of plaintiff's claim of disability. These arguments, however, go to the credibility and weight of the evidence and were matters for the jury to determine. On this review we must consider the evidence most favorably to the plaintiff, the prevailing party.

Counsel for both parties have furnished us with citations to cases bearing on the question of excessiveness. We have considered all of these and others as well. Our conclusion is that the award is not excessive, under the evidence and the adjudicated cases. Nor does it indicate bias and prejudice on the part of the jury. Among the cases most persuasive are: Rucker v. Illinois Terminal R. Co., 364 Mo. 804, 268 S.W.2d 849; Pinter v. Gulf, Mobile & Ohio R. Co., 362 Mo. 887, 245 S.W.2d 88, and Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674.

We have considered all of the questions presented for review and have ruled them against the appellant. For the reasons stated, the judgment is affirmed.

All concur.